**MISSOURI–KANSAS–TEXAS R. CO. et al.**
**v. BROTHERHOOD OF RY. & S. S.**
**CLERKS et al.**

Nos. 10219, 10220.

United States Court of Appeals
Seventh Circuit.

March 26, 1951.

Rehearing Denied May 1, 1951.

Carroll J. Donohue, St. Louis, Mo., Herbert L. Stern, Jr., Chicago, Ill., James L. Crawford, Cincinnati, Ohio, Leo J. Hassenauer Chicago, Ill., Hassenauer, McKeon & Trussell, Chicago, Ill., Edward J. Hickey, Jr., Washington, D. C., Salkey

& Jones, St. Louis, Mo., Gottlieb & Schwartz, Chicago, Ill., Mulholland, Robie & Hickey, Toledo, Ohio, of counsel, for appellants.

W. R. Howell, St. Louis, Mo., G. H. Penland, M. E. Clinton, Dallas, Tex., William J. Milroy, Chicago, Ill., for appellees.

Before KERNER, DUFFY, and FINNEGAN, Circuit Judges.

KERNER, Circuit Judge.

These appeals are from an order temporarily enjoining the Brotherhood of Railway and Steamship Clerks from prosecuting any suit to enforce three awards theretofore entered in its favor by the National Railway Adjustment Board. The order was entered in a civil action brought by the Missouri-Kansas-Texas Railroad Company and an affiliated carrier against the Board, the Third Division thereof and its individual members; the Order of Railway Telegraphers and the Vice-President thereof; and the Clerks and their Vice-President. We shall refer to the parties as the carriers, the Board, the Clerks, and the Telegraphers.

The subject matter of the suit was a series of awards which had been rendered by the Board pursuant to proceedings before it with two different referees sitting with it on petitions filed by the Clerks and the Telegraphers involving the same jobs —in other words, the original controversy was the familiar inter-union dispute in which the carriers had only a passive interest. However, they became actively interested when the dispute between the rival claimants was resolved in favor of both of them, with a series of awards directing the carriers to employ a member of each group for each of the jobs in dispute. The carriers thereupon filed this suit praying a temporary injunction restraining all parties from attempting in any manner to enforce the awards pending final determination of the controversy, and, upon final hearing, a permanent injunction restraining enforcement of the awards, a declaration that the awards are null and void, and an order on the Board to reopen the proceedings in each controversy and consolidate all so that the various issues would be

settled in a single hearing with all parties having any interest therein given notice and opportunity to participate.

The evidence adduced at the hearing on the motion for preliminary injunction was largely documentary, consisting of a series of exhibits pertaining to proceedings before the Board on similar earlier claims as well as those here involved. From this evidence the court rendered findings of fact to the effect that in eight dockets including No. 2544 which involved the same subject matter as one of the awards here involved, the Board had deadlocked on the issue of giving notice to persons or organizations other than the parties to the disputes whose interests might be affected by awards on the merits. The carrier members took the position that binding and conclusive awards could only be rendered after notice given to all whose rights might be involved. However, the Board, with Referee Bruce Blake sitting as a member, set the dockets down for hearing with notice only to the Clerks and the carriers, and they were the only parties who participated in the hearings. Because of the absence of the Telegraphers who, Referee Blake held, had a vital interest in the outcome of the dispute, No. 2544 was dismissed without prejudice. Similar claims were withdrawn by the Clerks. Three years later, in 1947, these same claims, involving the same positions, were again filed, and, after deadlock, with James Douglas sitting as referee, again without notice to the Telegraphers or opportunity to be heard, the Board entered its awards that the carriers had violated their agreement with the Clerks in permitting employees working under the Telegraphers' agreement to do the work in dispute, and ordered the carriers to assign the positions to the Clerks.

Upon receipt of the awards the Clerks made demand upon the carriers to comply therewith, and the carriers, solely because of the awards and the demands based thereon, put them partially into effect, abolishing certain positions theretofore assigned pursuant to the agreement with the Telegraphers. The Telegraphers immediately protested this action and, in 1949, filed their claim with the Board for alleged viola-

tion by the carriers of the agreement with their organization in their action in implementing the awards in favor of the Clerks. The carriers again asked the Board to make the other group a party to the proceedings, contending that no legal and binding order could be made unless the other parties in interest were permitted to appear and be heard. The District Court found that in answering this contention the Telegraphers stated that if they had been permitted to intervene in the Clerks' dockets and awards they could have shown that the positions in dispute had been duly negotiated between the carriers and the Telegraphers in 1916 and had been continuously in effect since that time. Again the Board deadlocked on the issue of notice to the other group, and a different referee, Mortimer Stone, was appointed to sit with the Board for hearing on the merits with only the carriers and representatives of the petitioning employees present and participating. This hearing resulted in an award sustaining all the claims of the Telegraphers and an order on the carriers to make the award effective and pay all sums of money due thereunder.

The District Court further found that to comply with the Telegraphers' award the carriers would be compelled to restore the positions transferred in compliance with the Clerks' awards, and that application of the principles established by the Clerks' awards in accordance with their contentions would require an annual expenditure of approximately $547,200.

The trial judge concluded that it was the duty of the Board in the Clerks' dockets to give notice of all hearings to the Telegraphers and to all individual employees involved in the disputes and to hear their contentions as one dispute before making any awards or orders and, similarly, in the matter of the Telegraphers' claims, it was the Board's duty to give notice to and hear the Clerks and all employees involved, and that the carriers were entitled, in each case, to have those duties performed by the Board and, in failing to perform such duties, the Board violated the Railway Labor Act, 45 U.S.C. A. § 151 et seq., and denied the carriers due process of law.

The District Court further concluded that the Board had exclusive primary jurisdiction to interpret the agreements of the Clerks and Telegraphers with the carriers, and that while the court had no jurisdiction to interpret the agreements, it did have the power to declare void the action or inaction of the Board which denied due process of law to any party to the disputes or to any carrier or employee involved therein; that the case did not involve a labor dispute within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq.; and that the carriers had no adequate remedy at law, hence the complaint stated a cause of action upon which relief could be granted to the carriers; and it ordered that a preliminary injunction should issue restraining enforcement of the Clerks' awards until disposition of the cause on the merits. Because it then appeared that final disposition of the Telegraphers' award awaited disposition of a petition for rehearing filed by the carriers, the court refrained from acting on the application for preliminary injunction in that cause.

■ We think the District Court correctly concluded that this case does not involve a labor dispute within the meaning of the Norris-LaGuardia Act, and that that Act did not deprive the court of jurisdiction. See Virginian Railway Co. v. System Federation No. 40 etc., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 237, 70 S.Ct. 14, 94 L.Ed. 22; and Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527, 533.

In our view the all important question raised by these appeals is that of the jurisdiction of the court over the subject matter of this proceeding. Both appellants contend that since § 3, First (p) of the Railway Labor Act, 45 U.S.C.A. § 153, subd. 1(p), makes special provision for judicial review of awards of the Board, jurisdiction over such reviews is vested only in the courts therein specified and must be exercised in accordance with the procedures therein provided.

■ There is no question now but that the courts have absolutely no jurisdiction to interpret agreements between carriers and their employees or to settle disputes arising out of the construction of such agreements. That principle has been so firmly established by a series of decisions construing § 3 of the Railway Labor Act that we deem it unnecessary even to cite authorities. But that is not the question presented by these appeals. Here the novel issue is whether the court may act under its general equity jurisdiction to prevent the irreparable damage which the carriers assert will follow if they are relegated to the statutory procedure for review of awards.

We think the cases relied upon, which deny primary jurisdiction of the courts over disputes growing out of the construction and application of collective bargaining agreements in the railroad industry, do not control the decision of the issue here presented. Here the court found that the agreements in controversy had already been submitted to the Board and had become the subject of inconsistent awards, the enforcement of which would add substantially to the costs of operation of the railroads. And, as the carriers contend, enforcement is practically inevitable if the statutory procedures for review provided by § 3, First (p) are allowed to be invoked since each award and order, presumptively valid, would be the subject of a separate, independent proceeding in which, as in the proceeding before the Board, only they and the employee in whose favor it had been rendered would participate.

■ The dilemma here posed results in large part from the refusal of the Board to bring both groups of claimants before it in one proceeding. Judging from a number of opinions accompanying awards and orders which were introduced as evidence in this cause, it appears to have been generally assumed that the Board has no authority under the Act to consider two agreements simultaneously, each in the light of the other. However, we are convinced from our examination of the Act that it does not require such construction. It has been stated that the rules of the Board which it is authorized to promulgate under § 3, First (u) forbid such procedure. However, we have been cited to

306

no such rule and doubt its existence in view of the fact that it appears that the Board itself has generally deadlocked on the question, with the carrier members consistently upholding the view that where a claim is filed against a carrier by a labor group contemplating the ousting of other employees in favor of the claimant, those other employees sought to be ousted have a vital interest in the proceeding and, under § 3, First (j) of the Act, a right to notice and opportunity to participate in the hearing before the Board. The labor members have with equal consistency denied this contention. We think logic and reason support the carriers' construction of § 3, First (j) which provides that the Board shall give due notice of all hearings "to the employee or employees and the carrier or carriers involved in any disputes submitted to them." We can think of no employee having a more vital interest in a dispute than one whose job is sought by another employee or group of employees.

■ Obviously it is desirable to settle controversies such as these involving so-called "overlapping contracts" on the basis of the existing contracts wherever possible instead of compelling resort to the machinery provided by § 6 for changing agreements. Of course this may not always be possible, but it is certainly much more likely to result if both parties to the dispute are brought before the Board with their respective agreements and each is considered in the light of the other, together with the usage, practice and customs of the industry, or of the particular carrier. And we think the case, Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, supports this view. That case also involved a dispute between two groups of employees, both of whom claimed the same jobs by virtue of the agreement of each with the carrier. There the Supreme Court upheld the function of the Adjustment Board to resolve the conflict, but indicated that in doing so, the Board must consider both agreements together, stating 326 U.S. at page 567, 66 S.Ct. at page 325, "O. R. C.'s agreements with the railroad must be read in the light of others between the railroad

and B. R. T. And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom, that too must be taken into account and properly understood."

■■ A temporary injunction is a provisional remedy granted before a hearing is had on the merits; its object usually is to preserve the subject of the controversy in its then existing condition—to preserve the status quo. Hunter v. Atchison, Topeka and Santa Fe Ry. Co., 7 Cir., 188 F.2d 294; Doyne v. Saettele, 8 Cir., 112 F.2d 155. In our case Judge Barnes, in granting the temporary injunction, made no final determination of the merits. He determined only the question whether the subject of the controversy should be preserved in its then existing condition. Under these circumstances his order will not be disturbed on appeal except for an abuse of discretion. We are unable to say that there was an abuse of discretion here. It follows that the order of the District Court must be affirmed. It is so ordered.