### ILLINOIS CENT. R. CO.
### v.
### WHITEHOUSE et al.
### No. 10959.

United States Court of Appeals
Seventh Circuit.
March 19, 1954.

Mozart G. Ratner, Chicago, Ill., Milton Kramer, Washington, D. C., Schoene & Kramer, Washington, D. C., for appellant.

Herbert J. Deany, Charles I. Hopkins, Jr., John W. Foster, Chicago, Ill., Kenneth F. Burgess, Walter J. Cummings, Jr., Chicago, Ill., Douglas F. Smith, D. Robert Thomas, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel, for appellee Carrier Members.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

The Order of Railroad Telegraphers (hereinafter referred to as Telegraphers) filed a claim before the National Railroad Adjustment Board, Third Division (hereinafter referred to as the Board), against the Illinois Central Railroad Company (hereinafter referred to as Carrier), asserting that an agreement between the Carrier and Telegraphers covered the work of a position on the property of the Carrier in Palestine, Illinois, which was then being performed by D. A. Shears, a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (hereinafter referred to as Clerks).

After this claim was filed with the Board, the Carrier was informed in writing by the Clerks that in the event the employment rights of the present incumbent of the position in question are adversely affected by the claim filed by the Telegraphers, the Clerks will present and prosecute a claim against the Carrier based upon the same employment rights which are involved in the Telegraphers' proceeding.

Thereafter, the Carrier filed its submission with the Board, stating that the employment in controversy was plain, ordinary clerical work of the type customarily performed by clerical personnel on the Carrier's property and in the industry generally, and that the claim was in reality a dispute between the Telegraphers and the Clerks and should be dismissed unless the Board gave each organization an opportunity to present its side of the case. Then ten regular members of the Board, consisting of five carrier members and five labor members, deadlocked on the merits of the Telegraphers' claim, following which a Referee was appointed by the National Mediation Board, pursuant to Sec. 3, First (*l*) of the Railway Labor Act, 45 U.S.C.A. § 153, First (*l*), to act as a member of the Board for the purpose of making an award.

On May 13, 1953, the Telegraphers' claim came before the Board for hearing, at which time a question was raised by Mr. Horsley, a carrier member that, no notice had been served on the Clerks or on members of the craft represented by the Clerks "who were directly involved in the claim." A vote was taken on the question of giving notice, which resulted in a tie, the five carrier members voting to give notice and the five labor members against. The Referee abstained from voting. Mr. Horsley thereupon, the said Referee being present, objected to further proceedings in said matter until the Board had complied with Sec. 3(j) of the Railway Labor Act relative to the giving of notice to parties involved. Notwithstanding this objection, the hearing was resumed, with the Referee present and acquiescing in such action.

On May 22, 1953, the Carrier filed the instant action against the Board, each of the ten individual members of the Board, and Donald F. McMahon, acting as Referee and member of the Board by direction of the National Mediation Board. The complaint recited in detail the facts outlined above and alleged that "the Board does not intend to and that

it will not give the statutory notice to the Clerks and to the said D. A. Shears, or to either of them;" and that further demand that the Board do so would be unavailing and that the Board would hold further proceedings in the matter without giving such notice "unless such action is enjoined" by the court.

The complaint also alleged that "for several years last past the Board has continuously and deliberately pursued, and continues to pursue, a custom and practice of denying the right of participation in any claim pending before it to any party or employee involved but not formally served with notice of the proceeding. That said custom and practice excludes employees and unions other than the one filing the claim with the Board and those seeking to represent them from participating in hearings before the Board." This allegation is supported by the affidavit of a carrier member and is not disputed.

The complaint prayed for "a preliminary restraining order and a temporary injunction to be made permanent on final hearing: (1) Directing the defendants, and each of them, to forthwith serve or cause to be served due notice of the claim filed against plaintiff by the Order of Railroad Telegraphers in Docket No. TE–5722," upon Shears and the Clerks "as required by Section 3(j) of the Railway Labor Act", 45 U.S.C.A. § 153(j), and "(2) Restraining and enjoining the defendants herein, and each of them, from proceeding with any disposition of said claim until such due notice has been served upon" Shears and the Clerks.

Telegraphers as an intervening defendant filed an answer in opposition to the Carrier's motion for a preliminary injunction. This answer alleged lack of jurisdiction by the court to grant injunctive relief for the reason that the judicial review of awards of the Board provided by the Railway Labor Act in Carrier has not exhausted its administrative remedies; that the Board, with the Referee sitting as a member there-

of, has not made, but will make unless enjoined, a final determination of the Carrier's contentions, including its contention that any award in favor of Telegraphers would be invalid unless notice is given to the Clerks; that the complaint is premature because the Referee may decide Telegraphers' claim in favor of the Carrier, either on the question of notice or on the merits, in which case the Carrier cannot be injured; that, if the case should be decided in favor of Telegraphers, the Carrier, if correct on its contention as to notice, will have an adequate defense to any suit for enforcement of the award, which defense constitutes an adequate remedy at law; that the Clerks has its own contract with the Carrier governing the performance of work by members of that craft and it is, therefore, neither a necessary nor a proper party in the proceeding before the Board, and, finally, Telegraphers alleged that the record shows that the Clerks had actual knowledge of the pendency of the claim before the Board and that such knowledge dispenses with the necessity of giving formal notice. Telegraphers, therefore, asked that the motion of the Carrier for a preliminary injunction be denied.

The five labor members of the Board also filed an answer, objecting to the granting of a preliminary injunction as sought by the Carrier for substantially the same reasons as those asserted by the Telegraphers, and also filed a motion to dismiss the complaint for reasons similar to those set forth in their answer. The carrier members of the Board answered the complaint and generally agreed with the position of the Carrier as set forth in its complaint.

The Board, the Referee and the "United States of America, the latter being the real party in interest under the Railway Labor Act [45 U.S.C.A. § 151 et seq.], and on which service was made in accordance with Rule 4(d) (4) and (5) of the Federal Rules of Civil Procedure [28 U.S.C.A.]," filed a motion to dismiss the complaint on the grounds that (1) the complaint shows on its face that it is prematurely brought, (2) the complaint fails to state a claim upon which relief can be granted, and (3) plaintiff is not threatened with irreparable injury arising out of any threatened action by the Board.

We discern no substantial dispute as to the facts; at any rate, there is no attack upon the findings as made by the district court, which are predicated upon the pleadings and numerous exhibits attached thereto. The court specifically found that the proceeding before the Board involved the employment rights of certain employees to a position then held by D. A. Shears, a member of the Clerks' union, and that Shears and the members of the craft represented by the Clerks would be affected by and are involved in the Board proceeding. The court found that no notice of the proceeding had been served upon Shears, that there was nothing in the record to show that he had actual knowledge thereof and that no formal notice had been served upon the Clerks' union or the constituents thereof. The court found: "The Third Division of the National Railroad Adjustment Board has for several years continuously pursued, and continues to pursue, a custom and practice of denying to individuals involved in disputes before the Board their statutory and constitutional rights to participate in the hearings before the Board if said individuals have not been formally served with notice of the proceeding." And the court concluded that such custom and practice "is a denial of due process of law in contravention of the Fifth Amendment," and "The notice required by Section 3, First (j) of the Railway Labor Act is jurisdictional and if the Board fails to comply with this Section of the statute it is acting without statutory authority. The National Railroad Adjustment Board may not assert its general power under the Railway Labor Act and at the same time disregard the essential conditions imposed upon it by Congress for the exercise of such power."

The court denied the motion of the Board and the labor members thereof to dismiss the complaint, and by order enjoined the Board, its members and the Referee from proceeding in Docket No. TE–5722 (this being the Telegraphers' claim in controversy) "unless and until they give formal notice" to D. A. Shears and the Clerks and "permit said persons to participate in the proceedings in said docket."

The appeal is brought to this court by the labor members of the Board and the Telegraphers (designated in the caption of this opinion as defendants-appellants). There was no appeal by the carrier members of the Board (designated in the caption as defendants-appellees), and no appeal by the United States, the real party in interest under the Railway Labor Act.

The issues raised in this court are in substance the same as those pleaded by Telegraphers in its answer to the complaint, heretofore set forth, and need not be repeated. The explosive nature of the instant controversy revolved around Sec. 3, First (j) of the Railway Labor Act, which provides: "Parties may be heard either in person, by counsel, or by other representatives, as they may respectively elect, and the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them."

■■ There can hardly be any doubt, as the district court found, but that the Clerks and Shears were "involved" parties within the terms of this provision. And it is hardly open to question but that an award made by the Board in the absence of "due notice" to the "involved" parties, with an opportunity accorded to be heard, is void and that its enforcement may be enjoined for that reason. Nord v. Griffin, 7 Cir., 86 F.2d 481; Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 171 F.2d 594; same title and case on a second appeal, 7 Cir., 188 F.2d 294, and Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302. (These are all decisions by this court.) Further, it is not disputed that the Board refused to give notice to the Clerks and Shears and that it set the case and was about to proceed to a hearing and decision on the merits. Such was the situation when the complaint was filed which resulted in the order under attack, by which the Board, including the Referee, was restrained from proceeding further, in the absence of formal notice to the Clerks and Shears.

As already stated, neither the Board nor the United States has appealed from the order now under attack by Telegraphers, which is understandable in view of the position which they took in the court below. Their motion to dismiss was predicated in the main upon the premise that the action was premature and that the plaintiff was not threatened with irreparable injury. In their brief, however, it was conceded that any award to the Telegraphers entered in the absence of notice to the Clerks and Shears would be void and unenforceable.

The carrier members of the Board attached to their answer the findings and conclusions of the United States District Court for the Northern District of Illinois (Judge Barnes) in civil action No. 51C238, entitled Allain v. National Railroad Adjustment Board Third Division, 120 F.Supp. 453, where an order of the Board was held void and its enforcement restrained because of its failure to give notice to "employees involved," as required by Sec. 153, First (j) of the Act. Also attached to the answer is a letter written by the Department of Justice, dated May 11, 1951, and directed to the Secretary of the Board, Third Division. The letter states in detail the reason for the refusal of the Attorney General to represent the Board, the substance of which is that it is because of the Board's refusal to give notice to involved parties. The letter states, "It is, therefore, our opinion that these employees were deprived of their position without regard to their constitutional rights and it is not thought that this Department should

defend an order having that effect." In support of that position, the Department refers to many cases, including those of this court above cited, and summarizes the situation as follows: "It is thus clear that the courts have definitely determined that aggrieved individuals are entitled to notice in cases before the Adjustment Board, and that when such notice is not given, the Board's order is void. Since we think these decisions are entirely sound, we could not make a contrary contention on your behalf."

Telegraphers in its brief states that the action is premature because "The Board's decision may be in accord with the railroad's contentions." Closely allied with this issue is that the district court was without jurisdiction to grant an injunction "because the railroad has failed to exhaust its administrative remedies." Relative to the former contention, it is argued that the Carrier "may never be hurt by the allegedly improper procedure the Board is following" because the Board, if permitted to decide, "may decide for the railroad on the procedural ground or on the merits or on both. In any such event no harm would be caused to the railroad." It is asserted that the Board, with the Referee sitting as a member, may decide the issues favorably to the railroad and that in fact the Board has, with the Referee sitting as a member, denied a number of awards because of the lack of notice to third parties.

This brings us at once to the contention advanced by the Carrier that the Referee is without authority to participate in a decision as to whom notice shall be served upon but that such determination must be made by the Board as originally constituted. No authority is cited and we know of none where this question has been decided but we are convinced from our study of the statute that the contention is sound. The first duty or obligation imposed upon the Board after a claim has been filed is that contained in (j) (heretofore quoted). That paragraph contains the unequivocal command that the Board "shall

give due notice of all hearings". At that stage of the proceeding, it appears plain that there is no Referee and there could not be, by reason of the subsequent provisions which define the conditions and circumstances under which a Referee may be brought into the proceeding.

Paragraph (*l*) provides that "Upon failure of any division to agree upon an award because of a deadlock or inability to secure a majority vote of the division members," such division shall agree and "select a neutral person, to be known as 'referee', to sit with the division as a member thereof, and make an award." In case the members of the division are unable to agree upon and select a referee, then such fact may be certified to the Mediation Board, which shall select and name the Referee, "to sit with the division as a member thereof, and make an award." It appears certain that paragraph (*l*), providing for the selection of a Referee, presupposes that the Board has complied with the "due notice" provision of paragraph (j). Moreover, the Referee, whether selected by members of the division or by the Mediation Board, is authorized to sit as a member of the Board only for the purpose of "making an award." His authority to sit as a member for that purpose bears no relation to the obligation imposed upon the Board to give "due notice." That the Board is without power to proceed until it has complied with the "due notice" requirement of paragraph (j) is evidenced by the fact that an award made in the absence of such notice is void, and a study of the relevant provisions of the statute leaves little, if any, room for doubt but that the selection of a Referee is authorized only in the event that the division is deadlocked or unable to agree on the making of an award. In such case, a Referee is selected evidently to break the deadlock or, in the language of the statute, "to sit * * * as a member * * * and make an award." It appears that the Board recognized this limited authority of the Referee because

he did not participate or at any rate did not vote on the notice controversy.

■ Telegraphers in its brief further states, "We cannot assume that the Board will make an erroneous decision. In any event, until the Board makes its decision the courts are without jurisdiction to advise the Board of the correct decision," and "To be sure, the Board might make a decision that would turn out, on appropriate judicial review, to be wrong. But the mere possibility of an erroneous decision is hardly the basis for enjoining administrative action." This argument, if it can be thus dignified, begs the whole question. It is based on the false assumption that the Board possesses the power to make an award without giving "due notice" and an opportunity to involved parties to be heard. Obviously the court has not and will not advise the Board as to the kind of decision it should make. On that score we at present have no concern. The point is that the Board, under the situation existing, is without power to make any decision, right or wrong. And it must be remembered that the order under review does nothing more than restrain the Board from proceeding until it has complied with the statutory command. When it does that, a hearing may be had and a decision rendered which may be the subject of attack in such manner as is provided for by law.

The only case called to our attention where a restraining order has been issued under circumstances similar to those here is that of Townsend v. National Railroad Adjustment Board, Fourth Division, D.C.N.D.Ill., 117 F. Supp. 654, 658, (Judge Campbell). In that case, it was the Fourth Division which refused to give notice under Sec. 153, subd. 1(j), and the court issued an order in form almost identical to that of the present case. There, as here, the jurisdiction or authority of the court was under attack. The court in an unpublished opinion stated: "Congress has commanded in express terms that the several divisions of the NRAB 'shall give due notice of all hearings to the employee or employees * * * involved in any disputes submitted to them'; but Congress has not expressly defined a remedy for employees involved in a dispute who have not been given notice. If a district court lacked jurisdiction to order that notice be given, the 'right' to notice conferred by Section 3 would become mere verbiage, a right without a remedy. Congress could not have intended that result." We think that is a sound statement. True, it was made in a case where the relief sought was by an aggrieved employee rather than by the Carrier, as here, but even so, we discern no difference insofar as the jurisdictional issue is concerned.

Moreover, it is generally held that aggrieved parties may under some circumstances restrain action by the Board without an exhaustion of administrative remedies. Such was the holding in the decisions of this court heretofore cited. In Order of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S. Ct. 322, 90 L.Ed. 318, it was recognized that a court of equity might interfere in a proper case. True, the court there held that the case presented was not proper, but in doing so stated 326 U.S. at page 567, 66 S.Ct. at page 325, "Under these circumstances the court should exercise equitable discretion to give that agency [the Board] the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least, until then." Here, the Board has had an opportunity to pass upon the notice issue and has refused to comply with the statute. Nevertheless, we are urged to hold that it should be permitted to proceed to a hearing and a decision on the merits as a prerequisite to the right of a court of equity to interfere. Thus, a court before it can interfere must sit idly by until the Board has engaged in a mock proceeding. Such reasoning is devoid of all logic. And, as already pointed out, we are not aware of any administrative remedy for the review of an award made

by the Board. The only remedy is an attack in court upon such an award either in defense of an enforcement action or by injunction to restrain its enforcement.

 We conclude that the court had jurisdiction and that the action was not premature. Closely aligned with these issues and party covered by our discussion relative thereto is the contention that in any event the Carrier has no standing to institute such an action because it has shown no harm or damage and may never be able to do so, depending upon the decision which the Board makes on the merits. We think this contention is without merit. The Carrier has been involuntarily brought into the proceeding by action of the Board. In order to protect its rights and property, it must resist the Telegraphers' claim by participating in the proceeding. To do so it must expend time, labor and money in a fruitless effort to protect itself from a potential award rendered in a proceeding in which the Board is without jurisdiction. Moreover, the Carrier is threatened not only with an abortive proceeding before the Board but by the Clerks in an action concerning the same employment rights. The reasoning in Kirby v. Pennsylvania R. Co., 3 Cir., 188 F.2d 793, 799, is pertinent, wherein the court stated: "Until the statutory requirements are met, it [the Board] has no more standing to produce legally effective orders than any voluntary group of citizens. Anyone to be affected by the purported order can raise the point that it has no legal foundation. We conclude that defendant carrier may raise the point that employees involved in the dispute had no notice or knowledge of the hearing, and no opportunity to be heard before the Adjustment Board. A party is entitled to an award that will protect it in the event that it complies."

 We think the contention that the action must fail because it is shown that the Clerks had actual notice and that it was the representative of Shears is likewise, under the circumstances, without merit for a number of reasons. It is true that actual notice has been recognized as sufficient in some of the cases where the attack was upon the validity of the award. Here, however, it is sought to be utilized as a justification for the Board's refusal to comply with the statute. More than that, under the statute the employee (Shears) was entitled to notice the same as the Clerks, and it is not shown that he had notice of any kind. Of more importance, however, is the fact that actual notice would have served no purpose insofar as it afforded protection to the Clerks or Shears of either their statutory or constitutional right to be heard because, as the record plainly shows, the Board would not have permitted them to be heard with that kind of notice. A hearing would have been allowed only to those receiving formal notice. Such being the situation, the Board cannot hide behind the pretext that actual notice is sufficient and at the same time say that only those given formal notice will be heard. But it is asserted that the Clerks and Shears had no desire to be heard. Even so, that is beside the issue and no concern of the Board. The point is that the Board must accord the opportunity to be heard. When that has been done, the beneficiary of the right may exercise it or not, as he (or it) sees fit. It is difficult to understand why the Board persists in its refusal to give formal notice when such refusal, as the cases disclose, oftentimes furnishes the basis for protracted litigation. Instead of serving as an agency for the prompt and expeditious settlement of labor disputes, it lends itself to the incubation of controversy and further dispute.

 Telegraphers argues, and we assume it is the Board's position, that the Board is without authority to consider two agreements simultaneously and for that reason notice was not required to be served upon the Clerks or Shears. That contention has been rejected by this court in Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302. Referring to Or-

der of Railway Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, this court stated, 188 F.2d at page 306: "That case also involved a dispute between two groups of employees, both of whom claimed the same jobs by virtue of the agreement of each with the carrier. There the Supreme Court upheld the function of the Adjustment Board to resolve the conflict, but indicated that in doing so, the Board must consider both agreements together, stating 326 U.S. at page 567, 66 S.Ct. at page 325, 'O. R. C.'s agreements with the railroad must be read in the light of others between the railroad and B. R. T. And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom, that too must be taken into account and properly understood.'"

Lastly, we reiterate that this is not an action to review an erroneous decision of the Board. It is only to require the Board to perform its statutory duty as a prerequisite to its authority to proceed. While it is labeled as an injunctive proceeding, it is more in the nature of mandamus. At any rate, the Board has the choice of two alternatives, (1) proceed no further or (2) comply with the statutory requirement and proceed to a hearing on the merits, with an opportunity for all parties to be heard. The court in Wilbur v. United States, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809, made a relevant pronouncement. There the court stated: "Mandamus is employed to compel the performance, when refused, of a ministerial duty, this being its chief use. * * * Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be compelled by mandamus, unless there be provision or implication to the contrary."

The order appealed from is

Affirmed.

SWAIM, Circuit Judge (dissenting).

I think that the action in the District Court was premature because the Board had not finally acted on the matter and that, until such final action, the Carrier had not exhausted the administrative remedies provided by the Railway Labor Act, 45 U.S.C.A. § 151 et seq. As the Supreme Court said in Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767, 67 S.Ct. 1493, 1500, 91 L.Ed. 1796: "The doctrine [of first resorting to administrative remedies], wherever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention." This would seem to clearly negative the power of the courts to enjoin the *making* of an award. The Railway Labor Act expressly sets forth the reasons for its enactment. The fifth stated purpose is: "(5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C.A. § 151a (5).

If either party to a claim before the Board were privileged to go into court and enjoin further proceedings by the Board each time the Board decided some preliminary matter or took, or failed to take, some procedural step to which the complaining party objected, there would be neither "prompt" nor "orderly" settlement of such disputes, and the above quoted fundamental purpose of the Railway Labor Act would be defeated.

But the Carrier insists that it has been informed in writing by the Clerks that, in the event the rights of members of the Clerks' organization are adversely affected by an award in Docket No. TE–5722, the claim of the Telegraphers, the Clerks will present and prosecute a claim against the Carrier on behalf of any member of the Clerks so

affected; but if the Board should proceed with the disposition of the claim of the Telegraphers without serving notice on the Clerks and should find that the work here in dispute belongs to the Telegraphers, such a finding would not adjudicate the rights of the Clerks and would not preclude the Clerks from prosecuting an independent claim under the Railway Labor Act against the plaintiff; that if the Board should then decide such a claim by the Clerks to be valid, the Carrier would be forced to make payments to both organizations for the same work, although the services of the members of only one of the organizations were actually used; and that the Carrier by such action by the Board would suffer irreparable injury and damage which would continue unless the defendants were enjoined from proceeding without complying with Section 3, First (j) of the Act, 45 U.S.C.A. § 153, First (j).

I think none of these reasons assigned by the Carrier justified the bringing of this action prior to an award and order by the Board. It is to be noted that neither the Clerks nor Shears are parties to this action. The only party complaining of the action of the Board is the Carrier. If we assume, *arguendo*, that Section 3, First (j) of the Act required notice to the Clerks and to Shears, as the majority opinion holds, it is clear from the record that the Clerks had actual notice, and that the Clerks' organization intends to take whatever action it may consider necessary to protect the rights of Shears under the Clerks' contract with the Carrier. This plainly indicates that there is no misunderstanding between the Clerks and Shears, the individual, and that the Clerks' organization will represent Shears. We are not confronted here with the case of an individual working without the protection of a collective bargaining agreement with the Carrier and without representation of a labor organization.

The Carrier was, of course, thoroughly familiar with the scope rules of its contracts with both the Telegraphers and the Clerks. Since it was a party to both of these contracts, the Carrier possessed copies of the contracts which it could present to the Board with its suggestions and evidence, if any, as to how the scope rule of each contract should be interpreted and applied. This Carrier and all persons acquainted with the personnel of the Board and the methods of its operation know that in a case such as this every possible argument in favor of the Carrier's contentions will be made before the Board regardless of whether the Clerks are or are not made parties to the proceeding there. It certainly was not necessary to the proper presentation of the Carrier's defense against the Telegraphers' claim that the Clerks' organization or Shears be made a party to the proceeding.

The Carrier's claim to substantial and irreparable damage can only be predicated on an invalid decision, adverse to the Carrier as to the final award and order by the Board.

If the final award and order on the Telegraphers' claim is in favor of the Carrier, the Carrier, of course, suffers no possible damage, regardless of the decision of the Board as to participation by the Clerks in the proceeding and regardless of whether the Clerks' organization was given notice of the hearing or was permitted to participate in the proceedings before the Board on the Telegraphers' claim. At this stage of the proceedings before the Board we have no possible way of knowing what the final decision and award will be, but we must assume that the Board in arriving at its decision will be governed by the contracts and the evidence before it, and that all relevant evidence will be properly submitted to it and received by it.

The real problem facing the Carrier here, according to Paragraph XII of its complaint, is that the Board may make an award, first, in favor of the Telegraphers on their claim, and then make another independent award in favor of the

Clerks involving the same work; and that this will result in the Carrier's having to pay members of both organizations for doing the same work although the services of the members of only one organization are actually used. Here, again, we must assume that in the making of any award the Board will properly interpret and apply the Carrier's contracts with the two organizations. If there is no ambiguity in either contract and both contracts clearly include the same work, and we may not assume that the Board would make awards in favor of both the Telegraphers and the Clerks unless both contracts do cover the work, I see no alternative for the Carrier except to let members of one craft do the work for pay, and for the Carrier to pay damages to the members of the other craft for the breach of that contract. Neither the Board nor the courts may properly change either of two valid, unambiguous contracts made by the Carrier in order to avoid the consequences to the Carrier of having made conflicting contracts with the two crafts.

The complaint does not allege that the contracts are ambiguous and since the two contracts have not been made a part of the record in this case we have no way of knowing whether there is any ambiguity in the scope rule of either contract, or whether they are so clear and definite that they are not subject to interpretation. The mere fact, if it be a fact, that both contracts describe the same work does not mean that they are ambiguous. They are separate and independent contracts. If the contracts are not ambiguous neither the Board nor any court could do other than apply them as written. As said in Thomas v. New York, Chicago & St. Louis R. Co., 6 Cir., 185 F.2d 614, 617: "While the Board under the statute has jurisdiction to hear an individual grievance, it is not authorized to write a contract for the parties nor to create substantive legal rights."