**The ORDER OF RAILROAD TELEG-RAPHERS, Appellant,**

v.

**NEW ORLEANS, TEXAS & MEXICO RAILWAY COMPANY, Debtor, Guy A. Thompson, Trustee, Appellee.**

No. 15177.

United States Court of Appeals
Eighth Circuit.

Jan. 10, 1956.

Writ of Certiorari Denied
March 26, 1956.

See 76 S.Ct. 548.

**60**

Milton Kramer, Washington, D. C. (George A. McNulty, St. Louis, Mo., and Lester P. Schoene, Washington, D. C., on the brief), for appellant.

Thomas T. Railey, St. Louis, Mo., for appellee.

Carroll J. Donohue, St. Louis, Mo., Clarence M. Mulholland, and Edward J. Hickey, Jr., Washington, D. C., filed brief for Railway Labor Executives Ass'n et al., amici curiae.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

WOODROUGH, Circuit Judge.

This suit was brought in the District Court by the Order of Railroad Telegraphers, here called Telegraphers, under authority of 45 U.S.C.A. § 153, First (p) to obtain enforcement of Award No. 4734 rendered in their favor against the railroad by the National Railroad Adjustment Board, Third Division, on February 28, 1950 and not complied with by the railroad. The Award sustained a claim filed by the Telegraphers against the railroad and its trustee (here called carrier) to the effect that the carrier violated its collective bargaining agreements with the Telegraphers by assigning work covered by such agreements then being done by Telegraphers to members of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees (here called Clerks) and that the carrier should restore the displaced Telegraphers to their former positions and reimburse them.[1]

The defendant carrier pleaded in its amended answer as its second affirmative defense that the Award No. 4734 sought

---

1. Statement of Claim Sustained by Award No. 4734: Claim of the General Committee of the Order of Railroad Telegraphers on the Missouri Pacific Lines in Texas and Louisiana,

(a) That the Carrier violated the prevailing telegraphers' agreement dated October 15, 1940, particularly the Scope Rule and Rule 24(a) thereof, and also violated the provisions of the Memorandum of Understanding between the parties to this dispute dated April 22, 1941, when on February 28, 1948, the Carrier, acting alone, reclassified the position of star (*) agent at Anchorage, La., to agent-telegrapher, and removed from

to be enforced was void and unenforceable because the Adjustment Board failed to comply with the requirements of 45 U.S.C.A. § 153, First (j) that "the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any dispute submitted to them." Defendant alleged that the Clerks then performing the work claimed by the Telegraphers being adversely affected by the Telegraphers' claim of right to the same work were "employees involved in the dispute" and were indispensable parties necessary to be notified and given an opportunity to be heard in the proceedings before the Adjustment Board and the right was denied them. It was also alleged that the Award was "unenforceable for want of indispensable parties in this pending court proceeding." [2]

On the trial of the case before the Court without a jury, there was no material dispute as to the facts which were established through the pleadings which included a complete record of the proceedings before the Adjustment Board and its award, by pretrial proceedings and by stipulations, and the court sustained the second affirmative defense asserted by defendant [3] and entered judgment for defendant dismissing the case

the agreement and from said agent all of the clerical work formerly performed by him and assigned all of said clerical work to a newly created position of cashier not under the telegraphers' agreement.

(b) That the Carrier violated the terms of the prevailing telegraphers' agreement when, acting alone, it discontinued the position of first trick telegrapher-clerk at Anchorage, La., and assigned all of the work of the position to the improperly reclassified position of agent-telegrapher.

(c) That the position of star (*) agent and the position of first trick telegrapher-clerk at Anchorage shall be restored to the telegraphers' agreement and all employees adversely affected by these violative acts of the Carrier shall be restored to their former positions and be reimbursed for the difference between what they have earned and their full compensation lost, and in addition they shall be paid for any expenses incurred by reason of the Carrier's acts recited above.

2. "Second Affirmative Defense.

"16. Defendant avers that the suit at bar and the claim in question asserted before the Adjustment Board involves a jurisdictional controversy wherein plaintiff claims jurisdiction over certain clerical work now performed by a cashier at Anchorage, Louisiana, as a member of the craft for which the clerk's organization is the duly accredited representative with authority to represent its members in proceedings of this kind and that the clerks' organization and/or its members adversely affected by the claim of the Telegraphers are indispensable parties defendant and were necessary parties to be notified and given an opportunity to be heard in the proceedings before the Adjustment Board. Defendant avers that the Board gave no notice to the clerks' organization, or any member thereof, respecting the pendency or hearing of the Telegraphers' claim in question with opportunity to be heard, and in no way undertook to carry out the requirements of Section 3, First (j) of the Railway Labor Act; that on information and belief, the Clerks did have actual knowledge of the pendency of the controversy more specifically described in the award now sought to be enforced and of the pendency of the proceedings before the Board, but at the time the Adjustment Board considered the claim at bar and handed down Award No. 4734, February 28, 1950, and prior to a change in the Board's practices announced in Award No. 5432 handed down September 6, 1951, it was not the policy or practice of the Third Division of the Adjustment Board to notify claimants or their accredited representatives of the pendency of adverse claims of other crafts affecting their rights, or to notify them of hearings thereon, or permit them to be heard. Defendant therefore avers that the award of the Adjustment Board here sought to be enforced is void and unenforceable because of the failure of the Adjustment Board to comply with the mandatory requirements of Section 3 First (j) of the Railway Labor Act and that said award is unenforceable for want of indispensable parties in this pending court proceeding."

3. Except that it made no reference to the allegation that the clerks were indispensable parties defendant in this pending court proceeding.

with costs made payable as prescribed by 45 U.S.C.A. § 153, First (g). The judgment was accompanied by Opinion, Findings of Fact and Conclusions of Law. 135 F.Supp. 825.

The Court recited in its opinion that:

"In 1943 the Brotherhood of Railway and Steamship Clerks (hereinafter referred to as BRS) obtained an award and order 2254[4] by the National Railroad Adjustment Board, which held that the carrier was violating the Clerks' Agreement at Anchorage, Louisiana, with respect to the assignment of work. The plaintiff in this court filed suit to declare Award 2254 invalid, to enjoin the enforcement of the award and to declare the contract between BRS and the carrier upon which Award 2254 was based void, and to enjoin the enforcement of the contract. The injunctive relief sought was denied, 8 Cir., 156 F.2d 1, but the Court of Appeals held that the decision of the District Court dismissing the petition, 61 F.Supp. 869, be stayed until an opportunity was given plaintiff for application to the Railroad Adjustment Board for interpretation of the plaintiff's agreement. The plaintiff chose not to file an application with the Board and its suit was dismissed with prejudice. Subsequent to the dismissal of the suit after the members of BRS had taken over the work in accordance with Award 2254, which the plaintiff's members formerly performed, the plaintiff sought interpretation of its contract by the Railroad Adjustment Board which resulted in the award and order 4734, sustaining the plaintiff's interpretation of its contract awarding its members the work, which award and order is sought to be enforced in this suit. * * *

"Simply stated, the BRS [Clerks] contract with the carrier and the plaintiff's contract with the carrier overlapped. Both contracts proposed to cover the same work at Anchorage, Louisiana, and the National Railroad Adjustment Board has sustained both BRS and the

---

4.

"Award No. 2254
Docket No. CL–2163
"National Railroad Adjustment Board
Third Division
H. Nathan Swaim, Referee.
Parties to Dispute:
Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes.
Gulf Coast Lines, International-Great Northern Railroad Company, San Antonio, Uvalde & Gulf Railroad Company, Sugarland Railway Company, Asherton & Gulf Railway Company (Guy A. Thompson, Trustee).
Statement of Claim: Claim of the System Committee of the Brotherhood that:
"(a) The Carrier is violating the Clerks' Agreement at Anchorage, Louisiana, by requiring or permitting employes who are not covered by the Clerks' Agreement to perform work that is covered by the Clerks' Agreement. Also
"(b) Claim that the Carrier be required to assign the work here involved to employes who hold seniority rights and

work under the Clerks' Agreement.
(Statement of "Position of Employes" and "Position of Carriers" not here quoted.)
"Opinion of the Board: This award is controlled by the decision in Docket CL–2162, Award No. 2253, in which the essential facts were the same. The contentions and principles were there fully considered and for the reasons therein stated, this claim must be sustained.
"Findings: The Third Division of the Adjustment Board, upon the whole record and all the evidence finds and holds:
"That the carrier and the employes involved in this dispute are respectively carrier and employes within the meaning of the Railway Labor Act, as approved June 21, 1934;
"That this Division of the Adjustment Board has jurisdiction over the dispute involved herein; and
"That the Carrier violated the agreement as stated in the claim.
Award.
"The claim is sustained as to (a) and (b).
National Railroad Adjustment Board
By Order of the Third Division."

plaintiff in their interpretation of their respective contracts with respect to the work in question. Award 2254 was entered without the plaintiff being a party to the hearing and Award 4734 was entered without BRS being a party to the hearing: * * *."

The Court observed that this Court in Brotherhood of Railroad Trainmen v. Templeton, 181 F.2d 527, in dealing with an award where a somewhat similar situation to the one presented here was involved, approved conclusions of law by the District Court, loc. cit. 534, as follows:

" 'That the aforesaid awards of the National Railroad Adjustment Board, First Division, are illegal and void, in that they were rendered by said Board, in violation of Section 3 (j), Title 45 U.S.C.A. § 153(j), of the Railway Labor Act, because plaintiff and the members of the class whom he represents involved in said proceedings, were given no notice thereof, or afforded an opportunity to be heard therein, either in person or by counsel.

" 'Compliance by the Santa Fe with the provisions of said awards deprives plaintiff and the class he represents, of property rights without due process of law, in violation of the Fifth Amendment to the Constitution of the United States.' "

The trial Court also noted that this Court in approving the District Court's conclusions of law referred to above cites [and indicates that it is in accord with] Hunter v. Atchison, Topeka and Santa Fe Railway, 171 F.2d 594, wherein the Court of Appeals for the Seventh Circuit held a similarly obtained award to be void. The case of Missouri, Kansas and Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302, 305, was also cited. The Court there was concerned with an appeal from an injunction issued by the District Court temporarily enjoining the Clerks from prosecuting any suit to enforce awards entered in their favor by the National Railroad Adjustment Board. The carrier brought the action because awards had been entered in favor of both the Clerks and the Telegraphers covering the same jobs in the interpretation of their respective contracts. The trial Court quoted from the Seventh Circuit opinion upholding the granting of temporary injunction as follows:

" 'The dilemma here posed results in a large part from the refusal of the Board to bring both groups of claimants before it in one proceeding. Judging from a number of opinions accompanying awards and orders which were introduced as evidence in this cause, it appears to have been generally assumed that the Board has no authority under the Act to consider two agreements simultaneously, each in the light of the other. However, we are convinced from our examination of the Act that it does not require such construction. It has been stated that the rules of the Board which it is authorized to promulgate under § 3, First (u) forbid such procedure. However, we have been cited no such rule and doubt its existence in view of the fact that it appears that the Board itself has generally deadlocked on the question, with the carrier members consistently upholding the view that where a claim is filed against a carrier by a labor group contemplating the ousting of other employees in favor of the claimant, those other employees sought to be ousted have a vital interest in the proceeding and, under § 3, First (j) of the Act, a right to notice and opportunity to participate in the hearing before the Board. The labor members have with equal consistency denied this contention. We think logic and reason support the carriers' construction of § 3, First (j), which provides that the Board shall give due notice of all hearings "to the employee or employees and the carrier or carriers involved in any dispute submitted to them." We can

think of no employee having a more vital interest in a dispute than one whose job is sought by another employee or group of employees.

" 'Obviously it is desirable to settle controversies such as these involving so-called "overlapping contracts" on the basis of the existing contracts wherever possible instead of compelling resort to the machinery provided by § 6 for changing agreements. Of course this may not always be possible, but it is certainly much more likely to result if both parties to the dispute are brought before the Board with their respective agreements and each is considered in the light of the other, together with the usage, practice and customs of the industry, or of the particular carrier.' "

The trial Court noted further that the Court of Appeals for the Seventh Circuit had reiterated in Illinois Central R. Co. v. Whitehouse, 212 F.2d 22, and Allain v. Tummon, 7 Cir., 212 F.2d 32, that an award made by the Board in the absence of due notice to the involved parties with an opportunity accorded to be heard is void and enjoined its enforcement for that reason.

The trial Court accordingly declared in its opinion in this case that "The award and order of the National Railroad Adjustment Board, 4734, is illegal and void, in that it was rendered by said Board without giving members of BRS notice, and without the members of BRS having an opportunity in the hearing to be heard before the National Railroad Adjustment Board."

The conclusions of law declared by the District Court were as follows:

"1. The intent and purpose of former Award No. 2254 in favor of the Clerks was to give the disputed clerical work at the station of Anchorage to members of the Clerks' organization. The intent and purpose of the subsequent Award No. 4734 of the same division of the Adjustment Board now under consideration was to give the same disputed clerical work at the station at Anchorage to the members of the Telegraphers' organization. Both organizations claimed the clerical work in controversy and not merely pay for the work performed.

"The carrier has a right to abolish any position in the agreement provided the duties of the position are in fact abolished. The giving of the clerical work to the Clerks under Award 2254 of necessity took that work away from the Telegraphers. To now give the disputed clerical work to the Telegraphers under authority of Award No. 4734 will of necessity take that work away from a member of the Clerks' organization who is now performing the clerical work as Cashier at the station of Anchorage. The controversy now before the Court therefore involves conflicting claims of the Clerks and the Telegraphers to the same clerical work. The Clerks are involved in the dispute as that term is used in Section 3, First (j) of the Railway Labor Act.

"2. Even if it be held that Award No. 4734 now under consideration does not involve a jurisdictional controversy, but merely the interpretation of a labor agreement between the Telegraphers and the Carrier, the Clerks are nevertheless involved in the dispute for as stated in Order of Railway Conductors v. Pitney, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318, 323:

" ' * * * interpretation of these contracts involves more than a mere construction of a " 'document' " in terms of ordinary meaning of words and their position. * * * For O.R.C.'s agreement with the railroad must be read in the light of others between the railroad and B.R.T. And since all parties seek to support their particular interpretation of these agreements by evidence as to usage, practice and custom that

too must be taken into account and properly understood.'

"3. The Railway Labor Act specifically provides that 'the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers *involved in any disputes* submitted to them.' Title 45 U.S.C.A. § 153, First (j). The Board did not comply with this requirement of the Act, and it has been stipulated in this case that it was not the policy or practice of the Third Division of the Adjustment Board to permit persons or organizations whose relationship to the controversy was like that of the Clerks' organization or the employes represented by it to intervene or to notify them of the pendency or hearing of such proceedings before the Board. Neither formal notice nor actual knowledge, without opportunity to be heard, fulfills the purpose of the statute. Award No. 4734 is therefore unenforceable for the reasons more fully stated in Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527; Hunter v. Atchison, Topeka & Santa Fe Railway, 7 Cir., 171 F.2d 594; Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302; Illinois Central R. Co. v. Whitehouse, 7 Cir., 212 F.2d 22; and Allain v. Tummon, 7 Cir., 212 F.2d 32.

"4. In view of the ruling on defendant's 'Second Affirmative Defense', the Court withholds ruling upon the other questions involved."

It is contended for the Telegraphers, appellant in this appeal, that the decision of the District Court was erroneous in that it was contrary to the decision of this Court in Order of Railroad Telegraphers v. New Orleans, T. & M. R. Co., 156 F.2d 1, and that it failed to follow the "clear guide to decision" presented by the Supreme Court in Whitehouse v. Illinois Central R. Co., 1955, 349 U.S. 366, 75 S.Ct. 845. It is argued that our decision in Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527, may be distinguished and that the principles established by this Court in its earlier decision in the New Orleans, T. & M. case "are in accord with the intent of Congress * * * and those adopted by the Court of Appeals for the Seventh Circuit are contrary thereto."

The distinction which the appellant here seeks to draw between this case and the Templeton case is that in this case both the Clerks and the Telegraphers have "contracts or agreements" with the railroad whereas Templeton's class of employees held their jobs at the will of the railroad which employed them and the railroad was wrongfully coerced by the Brotherhood of Railroad Trainmen and the awards obtained by them. But that difference had no part in determining the decision of the Templeton case either in the trial court or in this court. We found in the Templeton case that the award obtained by the Trainmen purporting to take away the jobs of the messenger-baggagemen was illegal and void for want of opportunity afforded the baggagemen to be heard and we think that the same defect has been shown in respect to the award sought to be enforced in this case. The trial Court was not in error in holding that our decision in the Templeton case was applicable to and controlling in this case.

Nor do we find that the recent decision of the Supreme Court in Whitehouse v. Illinois Central R. Co., supra, should lead to a reversal in the present case. In the Whitehouse case the railroad sought temporary and permanent injunctions directing the National Railroad Adjustment Board to issue notice to the Clerks and their member Shears, of the proceedings brought before the Board by the Telegraphers to obtain an award assigning to them positions that were being filled under claim of contract rights by Clerks and restraining the Board from proceeding with any disposition of Telegraphers' claim until such notice was given. The District Court issued a preliminary injunction restraining the

Board from proceeding further in the matter unless notice was given to Clerks and their member Shears and the Court of Appeals for the Seventh Circuit affirmed.

The Supreme Court [349 U.S. 366, 75 S.Ct. 848], reviewing the judgment on certiorari, stated that it had "been urged to resolve the present dispute regarding the requirement of notice to persons not formal parties to a submission to the Board, a dispute which had resulted in numerous conflicting decisions by the Board." It observed "This remains a perplexing problem despite the substantial agreement among Courts of Appeals which have considered the question in holding that notice is required to other persons in varying situations." The cases are referred to in a footnote (3).

But despite the urging, the Supreme Court chose to stay within "the wise limitations on our function" and confined itself "to deciding only what is necessary to the disposition of the immediate case." It observed that "Railroad's resort to the courts has preceded any award, and one may be rendered which could occasion no possible injury to it." By divided Court it simply reversed the decree of injunction on the ground that prior to any proceedings brought by Telegraphers before the Board, "the injuries are too speculative to warrant resort to extraordinary remedies." The Court declined to adjudicate upon the merits of the controversy.

The result of the decision in the Whitehouse case therefore is exactly the same result that was reached by this Court and the District Court in the case of Order of Railroad Telegraphers v. New Orleans, T. & M. R. Co., supra [156 F.2d 1, 5], upon which the appellant is placing its reliance here. In the latter case the suit was between the same parties involved here. The Telegraphers were plaintiffs and sought to obtain declaratory judgment and injunctive relief against the enforcement of the awards made by the National Railroad Adjustment Board in favor of the Clerks, including Awards Nos. 2253 to 2258. The

Telegraphers' complaint was in two counts. In the first count they sought injunctive relief avoiding a certain contract between the carriers and the Clerks purporting to control clerical work being performed by the Telegraphers. In the second they sought injunctive relief against the enforcement of the awards that had been entered by the Board in favor of the Clerks concerning the same work.

On appeal of the case to this Court we held that the Order of Railroad Telegraphers had the "right under the Act [Railway Labor Act, 45 U.S.C.A. § 151 et seq.] to commence a proceeding against the carriers and to obtain an order of the Adjustment Board interpreting and applying its own contract with them." And that "Until that step is taken the court can not determine whether a wrong has been done calling for the intervention of a court of equity. * * *"

Although this Court vacated the judgment of dismissal and remanded the case with direction to stay decision therein, it determined as effectually as did the Supreme Court in the Whitehouse case that the suit of the Telegraphers was prematurely brought and therefore presented no ground for relief in equity. Both counts of the complaint were dismissed with no adjudication on the merits.

It is true that this Court did not mark off the boundary line of its adjudication in the New Orleans, T. & M. R. case as precisely as did the Supreme Court in the Whitehouse case. Though we held the action to be prematurely brought and therefore made no ruling on the merits, we did discuss provisions of the Railway Labor Act and considered and quoted from the decisions of the Supreme Court in General Committee etc., v. Missouri K. & T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76 and Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, but the adjudication made does not establish a precedent controlling decision in the present case.

■ We hold that the trial Court was not in error in applying Brotherhood of Railroad Trainmen v. Templeton, 8 Cir., 181 F.2d 527; Hunter v. Atchison, Topeka & Santa Fe Railway, 7 Cir., 171 F.2d 594; Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302; Illinois Central R. Co. v. Whitehouse, 7 Cir., 212 F.2d 22; and Allain v. Tummon, 7 Cir., 212 F.2d 32, or in its conclusions and that the judgment of dismissal appealed from must be sustained on the grounds stated by the trial Court.

It is contended here for the carrier appellee that the judgment of dismissal appealed from should be sustained on the further ground, not passed on below, "that said Award [No. 4734] is unenforceable for want of indispensable parties in this pending court proceeding."

■ The point has been briefed for the parties pro and con and we express our conclusion that the contention should be sustained. Enforcement of Award No. 4734 prayed for in the plaintiff's complaint in this suit would necessarily include the issuance by the Federal Court of a mandate requiring the defendant carrier to dispossess a clerk now in its employ of his job. The clerk's claim of right to the job has been determined by an Award of the Board and his interest in the suit to dispossess him of it is real and obvious. Yet neither he nor his union has been made a party to this suit and the object of the suit is to have the Court dispossess him without hearing him.

■ The subsection (p) under which this action was brought provides "Such suit in the District Court * * * shall proceed in all respects as other civil suits * * *" (with certain exceptions not here relevant.) It is well settled that a Federal Court will not proceed to final decision of a controversy brought before it without the presence of all "who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience." Shields v. Barrow, 17 How. 129, 58 U.S. 129, loc. cit. 139, 15 L.Ed. 158; Wesson v. Crain, 8 Cir., 165 F.2d 6, loc. cit. 9, and cases cited. Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A. has not modified the requirement as to indispensable parties. Wesson v. Crain, supra, and the undisputed facts in this case demonstrate that the Clerks are indispensable parties without whose presence justice cannot be done.

It is argued for the carrier that in consequence of the indispensability of the Clerks to a just determination of the complaint herein and the consequent duty of the plaintiff to bring them in as parties, the controversy between the Telegraphers and the Clerks as to the right to the jobs in question becomes justiciable. We confine our decision on the question of necessary parties to the holding that the judgment of dismissal of the plaintiff's case was justified by the lack of indispensable parties defendant, to-wit, Clerks.

A brief for the American Train Dispatchers Association and many other railroad labor unions, representing approximately a million railroad employees, as amici curiae was filed in this case similar in substance to the brief of the same parties by the same counsel filed in the Supreme Court in the Whitehouse case. The brief is in opposition to any determination that the jurisdictional dispute between the Telegraphers and Clerks is or may become justiciable by the Federal Courts and has been fully considered.

Affirmed.