A. SADLER, A. Dolan, J. M. Barron and C. H. Bauer, individually, and as representatives of a class, Plaintiffs,

v.

UNION RAILROAD COMPANY, a corporation; Brotherhood of Railroad Trainmen, Lodge 872, Brotherhood of Railroad Trainmen, Lodge 997; Brotherhood of Railroad Trainmen, Lodge 1018; Brotherhood of Railroad Trainmen, individually and as representatives of a class; H. R. Wadsworth, J. E. Berggren, Herbert Thomas, Q. C. Gabriel, S. Gregor, G. D. Rhodes, W. J. Cleary, individually and as representatives of a class, Defendants.

Civ. A. No. 11944.

United States District Court
W. D. Pennsylvania.

Nov. 18, 1954.

J. Alfred Wilner, Morris Zimmerman, Wilner, Wilner & Kuhn, Pittsburgh, Pa., for plaintiff.

James R. Orr, Donald B. Heard, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant Union R. Co.

Albert D. Brandon, Oliver, Brandon & Shearer, Pittsburgh, Pa., for defendant Brotherhood of Railroad Trainmen and individual defendants.

MARSH, District Judge.

The defendant carrier moves the Court pursuant to Rule 52(b), Fed.R.Civ.P., 28 U.S.C., to amend Finding of Fact numbered 26 to read: "USA [United Steelworkers of America] did participate in the hearing of November 19, 1953 as a party to the controversy." It also asks that the Court hold that Special Board of Adjustment No. 45 was a system, group or regional board, that its award in this case was valid, and that the Conclusions of Law be amended accordingly.[1] Alternatively, it asks the Court to review this controversy on the merits. A motion is also made pursuant to Rule 59, Fed.R. Civ.P., to strike the decree and enter a new decree after the decision on the merits.

We have not been persuaded that Finding numbered 26 or the decree should be altered, but believe that Conclusion of Law numbered 5 should be amended, and some clarification is indicated.

1. For Findings of Fact and Conclusions of Law, see 123 F.Supp. 625.

Preliminarily, it should be made plain that there were two hearings held on the time claim of J. E. Higgins, viz. on September 11, 1953 (see Finding of Fact 20) and on November 19, 1953 (see Finding of Fact 23), and that these hearings were to determine whether Higgins and other BRT [Brotherhood of Railroad Trainmen] operating personnel having seniority were entitled to an award on the theory that certain work, theretofore performed under the USA contract by nonoperating personnel, belonged to the operating personnel under the BRT contract with the carrier (see Finding of Fact 14).

First, the carrier urges, on the assumption that the Special Board of Adjustment was a statutory board within the intendment of the Railway Labor Act,[2] that the statutory requirements of notice[3] and opportunity to be heard were fully met by the notice of the November 19, 1953 hearing given to President Mathos of USA Lodge 1913 by the carrier on November 10, 1953 (see Findings 21 to 27, inclusive). It argues that the effect of our decision is to require actual notice to perhaps hundreds of employees in the mechanical department of the carrier who may possibly be affected by the award, and that such a requirement is unrealistic, cumbersome, burdensome and not intended by the statute when said employees have a duly selected representative.

No such rule is required by the facts in this case nor intended by the decision.[4] It was emphasized, perhaps, that actual or constructive notice of the hearings was not given to the individual members of USA by this Special Board, but the gravamen of the decision is that no notice was given to plaintiffs, or to anyone representing them, *of all the hearings* held by the Special Board on this particular time claim.

The carrier seems to regard the "reopened" hearing held November 19, 1953, as the equivalent of a de novo hearing of which President Mathos had notice. However, according to the evidence, the Board arrived at its award after considering not only the testimony of Mathos but also the testimony and contentions of BRT and the carrier taken at the hearing held on September 11, 1953, at which plaintiffs were not present or represented (see Findings 20, 21).

The statute commands that the employees involved be given notice of all the hearings preceding an award, not simply an opportunity to present their petition and views at one of two hearings held. No one contends that plaintiffs, or their representative, even had knowledge of the hearing held on September 11th.

Second, the carrier with some merit complains that awards of other special boards of adjustment in which it participates are jeopardized by our decision in this case.

Such an effect certainly was not intended. In order to reach the conclusions we did in this case, it was not necessary to agree with plaintiffs' contention that the Special Board was a common law board of arbitration, 123 F. Supp. at page 631. The awards made by Special Board No. 45 in deciding 100 odd disputes between the carrier and BRT have not been challenged and without doubt are valid and binding because the written contract between BRT and the carrier so provided (see Findings 15 and 16); as to those awards, whether the Special Board is held to be a common law board of arbitration or a statutory board under the Act is immaterial. But in respect to the controversy between the carrier, BRT and the USA plaintiffs, the award sub judice cannot be construed as one made by a system, group or re-

2. Section 3, subdivision second, 45 U.S.C.A. § 153, subdivision second.

3. Railway Labor Act, Section 3, subdivision 1(j), 45 U.S.C.A. 153, subdivision 1(j).

4. See discussion on the subject of notice in Kirby v. Pennsylvania R. Co., 3 Cir., 1951, 188 F.2d 793, 797.

gional board because the establishment of this Board was not mutually agreed to by all three for the purpose of deciding this particular dispute pursuant to Section 3, subdivision Second, of the Act.

The carrier seeks to supply the lack of mutuality by asserting that the court should find that the USA plaintiffs, through President Mathos, participated in the hearing of November 19, 1953, as a "party" to the controversy. It argues that Mathos, at the carrier's invitation, appeared at the hearing, but not as a witness of the carrier, and presented the position and views of the plaintiffs.

In Edwards v. Capital Airlines, 1949, 84 U.S.App.D.C. 346, 176 F.2d 755, 759, cited by the carrier to sustain another point, in proceedings before a duly constituted system board, the plaintiffs, like the plaintiff employees here, were not formal parties. Also like the plaintiffs here, they had no voice in selecting the members of the Board. Notwithstanding, those employees were treated as parties because, as the Court pointed out, they "were afforded every substantial right which they would have had had they been parties."

But it also appeared that those plaintiffs were present and represented by counsel at all the preliminary grievance proceedings before the company officials, as well as fully participating in all the proceedings before the Board. No such complete rights[5] were accorded the plaintiffs or their accredited representative in the proceedings here (see Finding 14).

■ In addition, since the carrier's invitation to Mathos did not in express words notify him that USA would be bound as a participating party or otherwise by the Board's eventual decision if he accepted the invitation, we cannot conclude that his acceptance thereof was

equivalent to an execution of the agreement creating the Special Board. Neither are we desirous of construing this invitation to Mathos as a trap binding plaintiffs to that agreement, which, so far as the evidence discloses, was never exhibited to him or any of the plaintiffs. Nor have we been persuaded to presume that Mathos by accepting the invitation ever intended to become bound by the award of a Board, one member of which was adverse to the USA position from the beginning.

In the light of the foregoing, Conclusion 5 should be amended to read as follows:

"5. Special Board of Adjustment No. 45, created by BRT and the carrier in this case, was not a system, group or regional board with respect to plaintiffs and the members of the class they represent within the meaning of Section 3, subdivision Second, of the Railway Labor Act."

The carrier's final contention is that the Court should review this controversy on the merits and arrive at a contrary decision. It relies on Edwards v. Capital Airlines, supra. However, since we have concluded that in this particular controversy involving the USA plaintiffs, the Special Board is not a statutory board and its award is invalid, cases such as Edwards v. Capital Airlines, supra, and Dahlberg v. Pittsburgh & L. E. Ry. Co., 3 Cir., 1943, 138 F.2d 121, are not in point because in those cases the courts were reviewing decisions of statutory boards before whom all the employees involved had fully participated.

■ For this Court to review on the merits the award of this non-statutory Board would be a usurpation of the exclusive jurisdiction vested in the boards authorized by the Act. We have not been

5. See Railway Labor Act, Section 2, subdivision 2, 45 U.S.C.A. § 152, subdivision 2, which provides: "All disputes between a carrier * * * and its * * * employees shall be considered, and, if possible, decided * * * in conference * * * by the carrier * * * and by the employees thereof *interested in the dispute*." [Emphasis supplied.] See also Railway Labor Act, Section 3, subdivision 1(i), 45 U.S.C.A. § 153, subdivision 1(i).

referred to any decision standing for this proposition.

In our opinion such an undertaking would be contrary not only to the rule laid down in the cases cited in the original discussion, but also to the policy, often expressed, that this type of controversy should be decided by legally authorized boards whose members are versed in railroad lore, practices and precedents. See Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, at page 243, 70 S.Ct. 577, 94 L.Ed. 795.