**UNION RAILROAD COMPANY**

v.

**NATIONAL RAILROAD ADJUSTMENT BOARD, FOURTH DIVISION, et al.**

No. 56 C 936.

United States District Court
N. D. Illinois.

Dec. 8, 1958.

Sidley, Austin, Burgess & Smith, Chicago, Ill., for plaintiff.

William J. Milroy, Chicago, Ill., for certain defendants.

Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for certain defendants.

Edward B. Henslee, Martin K. Henslee and John J. Naughton, Chicago, Ill., for certain defendants.

Goldberg, Devoe, Shadur & Mikva, Chicago, Ill., for certain defendants.

JULIUS J. HOFFMAN, District Judge.

This is an action for injunctive and declaratory relief. It arises under the laws of the United States, and the amount in controversy, exclusive of interest and costs, exceeds $3,000. The action was tried to the court alone upon briefs, oral argument and a stipulation of facts which, in substance, is as follows:

The plaintiff is a Pennsylvania corporation and is a "carrier" within the definition of that term in the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The defendant National Railroad Adjustment Board, Fourth Division (hereinafter "Fourth Division") is an administrative body created by the Railway Labor Act. The Fourth Division consists of six members, three appointed by labor unions and three appointed by carriers. Defendants West, Ryan and Tahney are Labor Members of the Fourth Division, and defendants Hagerman, Carter and Conway are Carrier Members. Defendant Pope is the Executive Secretary of the Fourth Division. Defendants Johnson and Coburn are referees selected by the National Mediation Board to sit in certain cases of the Adjustment Board. Defendant Johnson participated in Fourth Division Award No. 1093 and defendant Coburn participated in Fourth Division Award No. 1223.

Defendant United Steel Workers of America (hereinafter "Steelworkers") is a labor organization within the meaning of the Railway Labor Act. Steelworkers is the collective bargaining representative for certain persons employed by plaintiff, which persons constitute a class too numerous to be brought before the court. Similarly, the total membership of Steelworkers constitutes a class too numerous to be brought before the court. Defendants Doherty, Germano and Mills are members, officers, and agents of Steelworkers, and fairly and adequately represent both classes.

Defendant Brotherhood of Railroad Trainmen (hereinafter "Trainmen") is also a labor organization within the meaning of the Railway Labor Act. Trainmen is the collective bargaining representative for certain persons employed by plaintiff, which persons constitute a class too numerous to be brought before the court. The total membership

of Trainmen also constitutes a class too numerous to be brought before the court. Defendants Fern and Vander Hei are members, officers and agents of Trainmen, and fairly and adequately represent both of these classes.

From April 1914 until the present, plaintiff has operated a coal dock at Duquesne, Pennsylvania. Coal and fluorspar are brought by barge to the dock, are unloaded into a tipple, and flow by chute into freight cars which are moved from an "empty yard" to the chute and then to a "loaded yard." The empty cars are set into the "empty yard" by trainmen, and the loaded cars are picked up in the "loaded yard" and switched, classified and moved by trainmen. The intermediate work in the coal dock is performed by carloaders. Since 1938, the carloaders have been covered by agreements between Steelworkers and plaintiff. The last such agreement became effective on May 1, 1947. Since 1943, plaintiff's trainmen have been represented by Trainmen and covered by an agreement between Trainmen and plaintiff, effective November 1, 1943.

In August 1950, plaintiff first received time claims from Trainmen requesting that three employees represented by Trainmen be assigned to perform the work of the carloaders. Trainmen contended that the work was covered by its collective bargaining agreement with plaintiff. These claims were processed by plaintiff in accordance with customary grievance procedures, and the claims were denied on the ground that the disputed work had been performed by carloaders since 1914.

In July 1953, the plaintiff and Trainmen entered into an agreement establishing Special Board of Adjustment No. 45 (hereinafter "Special Board") to dispose of pending time claims and grievances filed by members of Trainmen against plaintiff. This agreement provided in part:

"7. The Board shall have jurisdiction *only* of claims and grievances submitted under the terms of this agreement. A list, to be designated as the 'original list', of cases to be submitted to the Board shall be prepared *by mutual agreement between the parties* * * *. In addition, there may be submitted to the Board *by mutual agreement between the parties* a 'supplemental list' * * *. (Emphasis added.)

"8. The Board shall hold hearing on each claim or grievance submitted to it. Due notice of such hearings shall be given *the parties*. At such hearings, *the parties* may be heard in person, by counsel, or by other representatives, as they may elect. The *parties* may present, either orally or in writing, statements of facts, supporting evidence and data, and argument of their position * * *.

"The Chairman may require any additional pertinent information as he may desire *from either party*." (Emphasis added.)

The agreement further provided that awards of the Special Board were to be "final and binding on both parties to the dispute."

In Case No. 34, the Special Board considered the time claims by Trainmen that trainmen should perform the coal dock work then being performed by carloaders. Plaintiff contended that, since the disputed work had always been performed by carloaders, both carloaders and Steelworkers should be given notice of the proceedings, and Steelworkers should be given the opportunity to participate. However, the Special Board refused to give notice. The incumbent carloaders did not have actual knowledge of the proceedings and did not authorize the plaintiff to represent them. Steelworkers did not participate in any hearings of the Special Board as a party to the controversy. However, plaintiff advised the president of Steelworkers' Local Lodge 1913 of a "reopened hearing" of the Special Board to take additional evidence, and he testified at that hearing. However, neither the carloaders nor any members of their class specifically authorized the president to represent them.

In December 1953, Award No. 34 was issued by a majority of the Special Board (labor member and neutral member) sustaining Trainmen's claim. Thereafter, plaintiff assigned three employees represented by Trainmen to work at the coal dock, and plaintiff reduced the number of carloaders from four or five to two. In addition plaintiff promptly paid time claims in accordance with Award No. 34, in the sum of approximately $1,200. Pursuant to the agreement by which it was created, the Special Board went out of existence after disposing of all claims and grievances submitted to it.

On January 27, 1954, four displaced carloaders sought injunctive relief from the United States District Court for the Western District of Pennsylvania. The instant plaintiff and Trainmen were made parties defendant and Steelworkers' Local Lodge 1913 was made a party plaintiff. After hearings, United States District Judge Marsh made findings of fact and conclusions of law and held that the defendant should be temporarily enjoined

"* * * from putting into effect the award of the Special Board of Adjustment insofar as it may cause loss of jobs or changes in working conditions of the plaintiffs or members of the class of employees they represent, as the same existed prior to January 7, 1954, pending submission, within a reasonable time, of the dispute involved to the administrative boards provided by Congress in the Railway Labor Act." Sadler v. Union R. Co., D.C.W.D.Pa. 1954, 123 F.Supp. 625, 632, opinion amended, D.C., 125 F.Supp. 912.

No appeal was taken from Judge Marsh's decision. In accordance with its understanding of Judge Marsh's decree, plaintiff restored the disputed work to the carloaders and discontinued the use of employees represented by Trainmen. On August 4, 1954, Trainmen informed plaintiff that it still asserted the time claims covering the disputed work. Trainmen contended that Judge Marsh's decree did not invalidate Award No. 34

as between plaintiff and Trainmen. Trainmen continues to assert its intention to enforce the award, and as of January 20, 1958, the time claims amounted to more than $22,500.

In August 1954, Steelworkers attempted to invoke the services of the National Mediation Board, but that Board declined to accept the case, stating that the National Railroad Adjustment Board was the proper administrative forum.

In April 1955, Steelworkers attempted to file a claim with the Fourth Division requesting a determination of the carloaders' right to the disputed work pursuant to the collective bargaining agreement between plaintiff and Steelworkers. Both the instant plaintiff and Trainmen were made parties respondent. By letter of April 26, 1955, the executive secretary of the Fourth Division refused to accept the claim until Trainmen was deleted as a party respondent. In May 1955, Steelworkers filed a revised claim with the Fourth Division and did not join Trainmen as a party. This claim was assigned Docket No. 1089.

As a result of the Fourth Division's refusal to accept Trainmen as a respondent, the instant plaintiff moved Judge Marsh to order all of the defendants in the Sadler case to join in the submission of the dispute to the Fourth Division. In the alternative, the instant plaintiff moved Judge Marsh to declare that the defendants refusing to join would be bound by the Award of the Fourth Division. These alternative motions were denied by Judge Marsh in a written but unpublished opinion.

On November 17, 1955, a hearing was held by the Fourth Division on Steelworkers' claim. Both plaintiff and Steelworkers were represented, and plaintiff contended that notice and opportunity to be heard should be given to Trainmen and the employees represented by it. The Carrier Members moved that notice be given, but the Labor Members voted against the motion, and it failed to carry. Subsequently, defendant Johnson was appointed referee, and a hearing on the merits was held on January 11, 1956.

At this hearing, plaintiff reasserted its contention that notice should be given. Again, the Carrier Members moved to the same effect, but the motion failed to carry, and the hearing was held without notice to or the participation of Trainmen. Plaintiff agreed with Steelworkers' contention that the carloaders were entitled to the disputed work pursuant to the collective bargaining agreement between Steelworkers and the plaintiff. Consequently, with reference to the interpretation of Steelworkers' collective bargaining agreement, the hearing was not an adversary proceeding, and this fact was expressly recognized by the Fourth Division. During the hearing the following documents, *inter alia,* were introduced in evidence: (1) the agreement between plaintiff and Trainmen establishing the Special Board, and (2) Award No. 34 of the Special Board containing the contentions of Trainmen with specific reference to those portions of Trainmen's collective bargaining agreement which Trainmen relied upon in claiming the disputed work.

In March 1956, the Fourth Division rendered Award No. 1093, and held that the disputed work was covered by Steelworkers' agreement. The Carrier Members dissented on the ground that notice and opportunity to be heard should have been given to the employees represented by Trainmen.

The instant action was filed on May 23, 1956, and plaintiff sought the following relief: (1) an order directing defendant members and secretary of the Fourth Division to serve notice upon Trainmen and plaintiff's employees represented by Trainmen; (2) an order enjoining the enforcement of the award of the Fourth Division; (3) an order enjoining enforcement of the award of the Special Board; (4) an order directing Trainmen to appear before the Fourth Division and to submit its claim for the disputed work; and (5) a declaration that both awards were void.

On or about November 21, 1956, and before any action was taken by this court, the Fourth Division set aside Award No. 1093, reopened Docket No. 1089 and ordered that the dispute be heard *de novo*. Notice and opportunity to be heard were given to Trainmen. Thereafter, a hearing was set for May 23, 1957, and notice was given to the immediate parties and to Trainmen. Trainmen refused to appear. On December 4, 1957, the Carrier Members moved that the Fourth Division, in rendering a decision on Steelworkers' claim, consider the collective bargaining agreement between plaintiff and Trainmen. The motion failed to carry. On the same date, the Labor Members moved that the Carrier Members' motion be amended to read that the Fourth Division lacked jurisdiction to consider the collective bargaining agreement between plaintiff and Trainmen because Trainmen was subject to the jurisdiction of the First Division, National Railroad Adjustment Board. This amendment failed to carry.

In February 1958, defendant Coburn was appointed referee, oral argument was set for March 5, 1958, and notice was given to the immediate parties and to Trainmen. Again, Trainmen refused to appear. At the hearing, the Carrier Members attempted to have the Fourth Division consider both collective bargaining agreements, and they gave the referee a copy of the Trainmen's agreement.

On May 8, 1958, Award No. 1223 was rendered, Carrier Members, dissenting. The award was in favor of Steelworkers, and it was held that the disputed work was covered by the agreement between Steelworkers and plaintiff. The agreement between Trainmen and plaintiff was not considered, and the decision of the Fourth Division did not purport to determine whether the disputed work was covered also by Trainmen's agreement.

At present, the plaintiff seeks the following relief: (1) a declaration that Award No. 34 of the Special Board is void; (2) an injunction against Trainmen from enforcing the award; (3) a declaration that Award No. 1223 of the Fourth Division is void and an order di-

recting the Fourth Division to set aside Award No. 1223, to reopen Docket No. 1089, and to consider both collective bargaining agreements before rendering a new award; (4) as an alternative to (3), a declaration that Award No. 1223 is binding on all parties, including Trainmen.

In determining whether the plaintiff is entitled to any relief, consideration will first be given to the existence, validity and enforceability of Award No. 34 of the Special Board. Initially, it must be determined whether, in light of Judge Marsh's decision in the Sadler case, Award No. 34 still exists. Specifically, the question is whether Judge Marsh merely restrained the instant plaintiff and Trainmen from enforcing the award so as to deprive the carloaders of their jobs or whether he declared the award void even as between plaintiff and Trainmen.

With regard to this question, plaintiff originally contended that:

"This decree did not purport to void the award insofar as Trainmen or its members were involved." (Complaint, par. 14.)

However, in its briefs and in oral argument, plaintiff now asserts that Award 34 was declared void even as between plaintiff and Trainmen. Trainmen and the Labor Members contend that, although enforcement of Award 34 was enjoined, the award was not declared void as between plaintiff and Trainmen.

Determination of the question is rendered difficult by ambiguities in the two Sadler decisions and in the subsequent unpublished opinion in which the court dismissed the carrier's motion for injunctive relief. Consequently, it is necessary to set forth a detailed analysis of the Sadler decision, which, as already noted, is reported as Sadler v. Union R. Co., D.C.W.D.Pa.1954, 123 F.Supp. 625, opinion amended, D.C., 125 F.Supp. 912.

Initially, the court made certain findings of fact. Findings 17, 18, 26 and 27 are as follows:

"17. None of the plaintiffs or members of the class they represent, or the United Steelworkers of America, were parties to the agreement of July 3, 1953.

"18. Representatives of USA did not agree with BRT and the carrier to establish this Special Board of Adjustment.

\* \* \* \* \* \*

"26. The USA did not participate in the hearing of November 19, 1953, as a party to the controversy.

"27. None of the plaintiffs, nor any of the members of the class they represent, individually and specifically authorized Jacob Mathos, president of the USA Lodge 1913, to represent them at any of the hearings held by the Board \* \* \* ." 123 F.Supp. at pages 628, 629.

The court then purported to consider whether the Special Board had jurisdiction to decide the dispute submitted to it. The court stated:

"Upon the authority of Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, which cites Order of Ry. Conductors of America v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318, it seems clear that, absent the consent of all parties, the Special Board of Adjustment should have refused to decide the jurisdictional dispute between the two unions which involves the interpretation of their respective contracts with the carrier, and should have left this question for determination by the Railroad Adjustment Board, pursuant to the requirements of the Railway Labor Act \* \* \* ." 123 F.Supp. at pages 629–630.[1]

---

[1] In the Pitney case, the Supreme Court held that a federal district court, in the exercise of its equitable discretion, should refuse to adjudicate a jurisdictional dispute involving a railroad and two employee accredited bargaining agents. In

The court concluded that:

"* * * an award made by a Special Board, without the consent of one group of employees involved in the dispute—here, the plaintiffs— is legally ineffective and, *as to plaintiffs,* a usurpation of statutory functions vested exclusively in the Railroad Adjustment Board * * * ." 123 F.Supp. at page 630. (Emphasis added.)

Next, the court considered the defendants' contentions that the plaintiffs were bound by the award of the Special Board and that the Special Board was a system, group, or regional board of adjustment under 45 U.S.C.A. § 153, Second, which provides in part:

"Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees * * * from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section * * * ."

The court stated:

"It is plain, however, that plaintiffs and their bargaining agent did not agree to the establishment of the Special Board. Therefore, it is not a system, group, or regional board. The contract creating it is signed only by the representatives of the carrier and BRT. Mutuality of agreement seems to be a statutory prerequisite to the establishment of a system, group, or regional

the Slocum case, the Supreme Court held that a state court lacked jurisdiction to interpret collective bargaining agreements in the railroad industry. The Slocum case also involved a jurisdictional dispute.

2. The parallel conclusion of law is as follows:
"5. A Special Board of Adjustment was not a system, group, or regional board within the meaning and intendment of [45 U.S.C.A. § 153, Second]." 123 F.Supp. at page 632.

board, and, where lacking, *the award of any such board is legally ineffective as to employees and their collective bargaining representative who do not agree or consent.* In addition, the procedures set up in the agreement of July 3, 1953, creating the Special Board are at variance with the statutory requirements." 123 F.Supp. at page 630. (Emphasis added.)[2]

The emphasized part of this quotation must be considered together with the finding of fact that the plaintiffs did not participate as parties to the Special Board proceedings. So considered, the entire quotation means only that an employee and his collective bargaining representative are not bound by the award of a Special Board if they do not consent to the creation of the board and if they do not participate as parties. This is the gravamen of the Sadler decision, and the rule applies *irrespective of the giving of notice.*

Next, the court considered an alternate and secondary ground of decision. That this alternate ground was mere dictum is manifest from the assumption (*contrary to fact*) made by the court that the plaintiffs had agreed to the creation of the Special Board. However, even this assumption availed the defendants nothing because the court concluded that the plaintiffs had not been given notice of *all* the hearings of the Special Board. Hence, the award could have no effect as against the plaintiffs.

Consideration must also be given to the court's conclusions of law. The second conclusion is as follows:

This conclusion cast doubt upon the validity of other awards rendered by the Special Board. As a result, the court, upon motion of the carrier, amended the conclusion to read as follows:

"5. Special Board of Adjustment No. 45, created by BRT and the carrier in this case, was not a system, group or regional board *with respect to plaintiffs and the members of the class they represent* within the meaning of [45 U.S. C.A. § 153, Second]." 125 F.Supp. at page 915. (Emphasis added.)

"2. *Insofar as the plaintiffs are concerned*, the award promulgated by the Special Board of Adjustment is void and of no effect." 123 F. Supp. at page 632. (Emphasis added.)

In its seventh conclusion of law, the court stated that the defendants should be temporarily enjoined:

" * * * from putting into effect the award of the Special Board of adjustment *insofar as it may cause loss of jobs or changes in working conditions of the plaintiffs * * * .*" 123 F.Supp. at page 632. (Emphasis added.)

The court then directed the plaintiffs to submit a form of decree, which decree is attached as exhibit B to the stipulation of facts. In relevant part, the decree restrained the defendants from implementing the award:

" * * * insofar as the said award and its enforcement may cause loss of jobs or changes in working conditions of the above individual Plaintiffs * * * ."

It is in the light of the above analysis that the court must answer the question whether the award of the Special Board was declared void even as between plaintiff and Trainmen. Plaintiff contends that the award was declared void. In support of this contention it is argued that "[n]owhere in the Sadler case does Judge Marsh declare Award 34 to be binding upon Trainmen and the plaintiff" (Pl.Supp.Br., p. 9). However, the question is not whether Judge Marsh specifically declared the award to be valid. Rather, the question is whether he declared the award to be void. Failure to declare the award valid is not tantamount to a declaration of invalidity. plaintiff omits to consider the possibility that the Sadler decision does not constitute an adjudication of either the validity or the invalidity of the award.

Next, plaintiff relies upon several isolated phrases from the Sadler opinion which tend to support the conclusion that the award was declared void even as between plaintiff and Trainmen. I have already set forth the relevant portions of that opinion. Those portions make it manifest that the court did not go beyond protecting the rights of the Sadler plaintiffs. A consideration of the entire opinion and decree compels the conclusion that the court did not declare the award void *in toto*, but that the court merely restrained enforcement of the award insofar as enforcement would operate to the prejudice of the displaced employees.

Finally, plaintiff contends that, in an unpublished opinion denying the carrier's motion for relief, the Sadler court indicated that it had declared the award void even as between plaintiff and Trainmen. As noted in the stipulation of facts, the carrier moved to compel Trainmen to intervene in the proceedings before the Fourth Division. In denying this motion the court stated:

"For the court to grant the carrier's motion * * * presupposes that the Board will not perform its jurisdictional duties pertaining to notice as required by law. The presumption is to the contrary." (See Exhibit C, stipulation of facts.)

This quotation is susceptible of the interpretation that the court was contemplating a hearing before the Fourth Division in which Trainmen would re-litigate its claim against the carrier. Such an interpretation would support the argument that the award of the Special Board had been declared void and the slate wiped clean to permit one proceeding before the Fourth Division embracing Trainmen, Steelworkers and the carrier. If this interpretation is correct,[3] it is in conflict with the quotations from the Sadler opinion, set out above, which

---

3. A perusal of the briefs in support of and in opposition to the carrier's motion indicates that the parties did not raise the issue of whether Judge Marsh declared the award void even as between the carrier and Trainmen. Since the unpublished memorandum does not expressly discuss the issue, it is to be doubted that the quotation should be interpreted as the carrier interprets it.

support the conclusion that the award was not declared void. However, it is not necessary to harmonize the quotation from the unpublished memorandum with the statements from Sadler. Suffice it to say that, regardless of conflict, the Sadler opinion does not declare the award void insofar as plaintiff and Trainmen are concerned. Nor does the Sadler opinion declare the award valid and enforceable as between the parties to the award. The court merely restrained enforcement of the award to the extent that enforcement would derogate from the carloaders' job rights.

However, regardless of the effect of the Sadler decision, plaintiff asserts that Award No. 34 of the Special Board is invalid. Consequently, it must next be determined whether the award should be set aside. For the reasons which follow, I am of the opinion that it should not be set aside.

The plaintiff argues that the award is void even as between plaintiff and Trainmen because the Special Board failed to give notice to the carloaders and Steelworkers. Trainmen makes the following contentions: (1) that in the Sadler case, the carrier did not attack the validity of the award, but asserted that the carloaders and Steelworkers were bound by it; (2) that the acts of the carrier in establishing the Special Board, agreeing to the submission of the dispute and paying the time claims asserted by the Trainmen constitute a binding arbitration and award; (3) that in accordance with the decision in Whitehouse v. Illinois Cent. R. Co., 1955, 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155, it was not necessary to give notice to the carloaders and Steelworkers; and (4) that the United States District Court for the Western District of Pennsylvania still has jurisdiction over the matter, and that this court accordingly lacks jurisdiction.

Of the cases relied on by plaintiff, those most nearly in point are Estes v. Union Terminal Co., 5 Cir., 1937, 89 F.2d 768; Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 1951, 188 F.2d 302; Kirby v. Pennsylvania R. Co., 3 Cir., 1951, 188 F.2d 793; Allain v. Tummon, 7 Cir., 1954, 212 F.2d 32; Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry. Co., 8 Cir., 1956, 229 F.2d 59, certiorari denied 1956, 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861; and Missouri-Kansas-Texas R. Co. v. National Railroad Adjustment Board, D.C.N.D.Ill.1954, 128 F.Supp. 331. In most of these cases the carrier successfully avoided enforcement of an award which was rendered without notice to all parties involved in the dispute.[4] In Estes v. Union Terminal Co., 5 Cir., 1937, 89 F.2d 768, the plaintiff sued to enforce an award which had the

4. Almost all of the other cases cited by plaintiff in its original brief involve actions *by the employee* who did not receive notice to set aside an award which prejudiced his job rights. See, for example, Nord v. Griffin, 7 Cir., 1936, 86 F.2d 481, certiorari denied 1937, 300 U.S. 673, 57 S.Ct. 612, 81 L.Ed. 879; Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 1948, 171 F.2d 594, certiorari denied 1949, Shepherd v. Hunter, 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726. The cases cited by plaintiff at pp. 4–5 of its supplemental brief support the proposition that an award is void if rendered without notice to one of the *parties*. See, for example, Lutz v. Linthicum, 1834, 8 Pet. 165, 33 U.S. 165, 178–179, 8 L.Ed. 904. However, Steelworkers was not a *party* to the Special Board proceedings. Plaintiff asserts that:

"Judge Marsh must have considered that the Steelworkers would have been bound if they had been given notice and an opportunity to participate before the Special Board, for he voided Award 34 on the ground that they had not been given such notice and opportunity to participate." (Pl.Supp.Br., p. 7, fn. 2.)

This assertion is not correct. Judge Marsh restrained enforcement of the award (to the extent that enforcement would deprive the carloaders of their jobs) because the carloaders and Steelworkers had not consented to the creation of the Special Board, had not participated as parties to the proceedings, and were not bound by the award. The quotation pertaining to notice was predicated on an assumption, made for purposes of discussion only, that the carloaders and Steelworkers had consented

necessary effect of depriving a fellow employee of his seniority rights. In a persuasive dictum, the court stated that a carrier may resist enforcement of an award which is rendered without notice to all parties involved. However, on the specific facts of the Estes case, the court reversed a judgment in favor of the carrier on the ground that the non-appearing employee had actual knowledge of the Adjustment Board's proceedings.

In the M-K-T cases, 7 Cir., 1951, 188 F.2d 302, decision on remand, D.C.N.D. Ill.1954, 128 F.Supp. 331, both the clerks' and telegraphers' unions claimed certain work for their members, and each union filed a claim before the Third Division. The claims were not consolidated, separate hearings were held, and, in each case, the adverse union was not given notice and an opportunity to appear. As a result of the dual proceedings, awards were rendered in favor of each union with regard to the same work. The carrier then sought injunctive relief. Judge Barnes issued a temporary injunction restraining the clerks' union from enforcing its award (injunctive relief against the telegraphers' union was denied because the Third Division was considering plaintiff's petition for a re-hearing in the telegraphers' case). On appeal, the Seventh Circuit affirmed the issuance of the temporary injunction, and the case was then heard by Judge Barnes on the merits. He concluded that the dual awards were void and that the plaintiff carrier had been denied due process of law because of the failure of the Third Division to give notice. Enforcement of the awards was enjoined.

In Kirby v. Pennsylvania R. Co., 3 Cir., 1951, 188 F.2d 793, a group of employees sought to enforce an award restoring them to certain positions. The defendant carrier moved to dismiss, asserting that notice had not been given by the Adjustment Board to the persons then occupying the disputed positions.

The motion was sustained. On appeal, it was stated that a carrier may properly resist enforcement of an award which is rendered without notice to all employees involved in the dispute. However, on the particular facts of the case, it was held that the motion to dismiss did not properly raise the issue of notice, and the decision was reversed and the case remanded.

In Allain v. Tummon, 7 Cir., 1954, 212 F.2d 32, a group of employees sought to enjoin enforcement of an award which, in effect, deprived them of work, and which award was rendered without notice to them. The defendant union cross-claimed for enforcement against the defendant carrier, and the carrier interposed want of notice as a defense. The cross claim was dismissed, and, on appeal, the dismissal was affirmed.

The Allain case was cited with approval in Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry. Co., 8 Cir., 1956, 229 F.2d 59, certiorari denied 1956, 350 U.S. 997, 76 S.Ct. 548, 100 L. Ed. 861. Here, the Eighth Circuit affirmed the dismissal of an enforcement action on the ground that the award was void for want of notice to the adverse union.

In opposition to the cases above cited, Trainmen relies on Whitehouse v. Illinois Central R. Co., 1955, 349 U.S. 366, 75 S.Ct. 845, 99 L.Ed. 1155. In the Whitehouse case, the Telegraphers claimed certain work then being performed by a member of the clerks' union. The dispute was brought before the Third Division and notice was not given to Clerks. After a hearing on the merits, but prior to any decision, the carrier sought injunctive relief to compel notice. The District Court granted the relief sought, and the Seventh Circuit affirmed. On certiorari, the decision was reversed. The specific and narrow ground on which the five-judge majority relied was that prior to any decision by

to the creation of the Special Board. Were the assumption true, it might well be argued that the carloaders and Steelworkers were parties and that, had they

received proper notice, they would have been bound by the award. However, the assumption was contrary to fact.

the Third Division, the action was premature and the asserted irreparable injury was speculative. However, in a lengthy dictum, it was stated, in relevant part:

"One thing is unquestioned. Were notice given to the Clerks they could be indifferent to it; they would be within their legal rights to refuse to participate in the present proceeding." 349 U.S. at page 372, 75 S.Ct. at page 849.

Trainmen seizes upon this statement and argues that it casts doubt on all cases requiring notice to the adverse union or employee. Plaintiff vigorously contends that the statement is dictum and is to be accorded no weight. See Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Ry. Co., 8 Cir., 1956, 229 F.2d 59, certiorari denied, 1956, 350 U.S. 997, 76 S.Ct. 548, 100 L.Ed. 861, discussed above, in which the Eighth Circuit limited Whitehouse to its direct holding and refused to apply the quoted dictum. However, even assuming the validity of plaintiff's contention, plaintiff cannot prevail.

In all the cases relied upon by plaintiff, the carrier was the *innocent* victim of an intolerable situation. The carrier either was under the onus of conflicting awards or was faced with the possibility of conflicting awards. But in any event, the situation was not of the carrier's own making, and the carrier's plight naturally found favor with a court of equity. In the case at bar, the plaintiff carrier attempts to portray itself as another innocent victim of conflicting awards rendered without notice to all parties. The portrayal is skillfully attempted, but it is inaccurate. The plaintiff is not an innocent victim. The validity of this assertion can best be appreciated by comparing the case at bar with Missouri-Kansas-Texas R. Co. v. National Railroad Adjustment Board, D.C.N.D.Ill.1954, 128 F.Supp. 331, discussed above. In the M-K-T case, the Third Division rendered conflicting awards pertaining to the same work in favor of two unions. In each instance, the adverse union was not given notice. And, in each instance, the carrier was *forced to respond* to the claim in proceedings before the Third Division. The carrier was *powerless* to forestall issuance of conflicting awards without resorting to judicial intervention. A substantially different situation obtains in the case at bar. It has already been noted that the agreement between plaintiff and Trainmen establishing the Special Board provided that the list of cases to be submitted to the Board "* * * shall be prepared by mutual agreement between the parties * * *." Accordingly, it must be inferred that the plaintiff consented to the submission of Trainmen's claim to the Special Board. Since neither the stipulation of facts nor the agreement discloses that plaintiff was compelled to consent to the submission of this claim, it must also be inferred that the consent was freely given.[5] At the time such consent was given, the disputed work was being performed by the carloaders. Hence, the plaintiff knew, or, in the exercise of reasonable business prudence, should have known that Trainmen's "simple" claim was, in fact, a triangular dispute which could not satisfactorily be resolved in a two-party pro-

---

5. In its supplemental brief, the carrier asserts that it agreed, under the economic compulsion of a threatened strike, to the establishment of the Special Board. Apparently, the carrier seeks to create the inference that the Special Board was thrust upon it by Trainmen. However, in its proposed findings of fact in the Sadler case, the carrier stated:

"During the mediation conferences, an agreement to create a Special Board of Adjustment to dispose of back-logged grievances *was presented by the carrier* through the Mediation Board to the BRT * * *." (Carrier's Proposed Findings of Fact, at p. 6.) (Emphasis added.)

But, even if the carrier had been forced to agree to the establishment of the Special Board, it specifically reserved the right to withdraw from the Board's consideration any matter tendered by Trainmen. The carrier could have, and, with reasonable foresight, should have refused to consent to the submission of the claim in question.

ceeding before the Special Board (unless the Board held in favor of the plaintiff). The carloaders and Steelworkers were not parties to the agreement creating the Board. They could not be compelled to assert their claim before the Board. And, as held in the Sadler case, absent participation by the carloaders, the Board's award could not be applied so as to prejudice their rights. These are plain and untechnical facts, well within the comprehension of a reasonably intelligent person. Under such circumstances, the plaintiff should not have consented to the inclusion of Trainmen's claim in the list of cases to be decided by the Board. But the plaintiff did consent, and an award ("final and binding" by the terms of the agreement) was issued which afforded the plaintiff no protection against the claim subsequently made by Steelworkers on behalf of the carloaders. The dilemma in which plaintiff now finds itself is a direct result of its own lack of prudence. Under such circumstances, the plaintiff can hardly be considered an innocent victim. On the contrary, it freely consented to the proceeding from which it now seeks relief.[6] Plaintiff's claim should not be favorably received by a court of equity.

Further, the cases relied upon by plaintiff may be distinguished from the instant case because they involve proceedings before the National Railroad Adjustment Board. In each of these cases, the National Board had jurisdiction over the class of employees to whom notice was not given. Hence, failure to give notice constituted an abdication of statutorily conferred jurisdiction. At the root of these cases (which require notice and which invalidate awards for want of notice) is the following concept: If an administrative board has jurisdiction over the parties to a triangular or jurisdictional dispute, the board should exercise its jurisdiction in such a manner as to resolve the entire dispute in one proceeding; if the board fails so to exercise its jurisdiction and if, as a result, the carrier is faced with conflicting awards, the carrier may seek equitable relief from the board's wrongful abdication of jurisdiction. However, in the instant case, the Special Board had no jurisdiction over the carloaders and Steelworkers. Consequently, failure to give notice was not an abdication of jurisdiction. It is true that if notice had been given, the carloaders and Steelworkers might have participated voluntarily as parties to the proceedings so that the award would have been binding on all parties interested in the dispute. However, in that event, the binding effect of the award on the carloaders and Steelworkers would arise from participation rather than from notice. Consequently, it cannot be said that the failure of the Special Board to give notice was an improper act which prejudiced the rights of plaintiff.

■ For the reasons above stated, I conclude that the plaintiff is not entitled to injunctive and declaratory relief with reference to Award No. 34 of the Special Board.

The plaintiff contends that, even if Award No. 34 is valid as between plaintiff and Trainmen, Award No. 1223 of the Fourth Division is void because the Fourth Division refused to "consider" Trainmen's collective bargaining agreement in rendering an award in favor of Steelworkers, and plaintiff concludes that the Fourth Division should be ordered to set aside Award No. 1223, to reopen the case and to consider both collective bargaining agreements before rendering a new award. In support of

6. On oral argument, plaintiff contended that its consent was *conditioned* by its belief that the Special Board would comply with the provisions of paragraph 8 of the agreement creating the Board by giving notice to the carloaders and Steelworkers. This matter may be outside the scope of the stipulation of facts. Even if it is not, plaintiff's contention is not well taken. Paragraph 8 of the agreement provided that the Board should give notice of hearings to "the parties." The carloaders and Steelworkers were not parties to the Special Board proceedings. Consequently, failure to give notice did not constitute a violation of the provisions of paragraph 8.

this conclusion, plaintiff asserts the following: (1) the Fourth Division has a duty to consider both collective bargaining agreements; (2) the failure of the Fourth Division to consider both agreements has resulted in conflicting awards; (3) the conflict in awards can be resolved only by requiring the Fourth Division to consider both agreements; (4) the National Railroad Adjustment Board has, in other cases, considered two agreements; and (5) the Fourth Division has jurisdiction to consider the collective bargaining agreement of a union which is subject to the jurisdiction of another division.

Trainmen argues (1) that Award No. 1223 is valid as between plaintiff and Steelworkers because the Fourth Division fully complied with the Railway Labor Act; (2) that the Act does not expressly confer jurisdiction on the Fourth Division to consider the contracts of Trainmen; and (3) that the Act should not be construed beyond its express provisions.

Steelworkers argues (1) that if the Fourth Division had jurisdiction to consider Trainmen's contract, no error was committed by its failure to do so because, on the merits of the dispute submitted to it, the Fourth Division properly held that the work was covered by Steelworkers' collective bargaining agreement; (2) that if error was committed, it did not deprive the Fourth Division of jurisdiction to issue an award, nor did it deprive the plaintiff of due process of law; and (3) that judicial relief is premature. In support of this last argument, it is contended that conflicting awards do not exist; that what the plaintiff really fears is that Trainmen will institute proceedings before the First Division to enforce its claims; that the First Division may decide the dispute in favor of plaintiff; and that, under the Whitehouse decision, plaintiff's injuries are hypothetical and speculative, and judicial relief is premature.

The Labor Members assert that the National Railroad Adjustment Board lacks jurisdiction to "reconcile" conflicting contracts. These defendants recognize that plaintiff purports to seek "consideration" of both contracts rather than "reconciliation." However, they argue persuasively (1) that the plaintiff conceded before the Fourth Division that Steelworkers' agreement embraced the disputed work; (2) that this concession obviated any possibility of ambiguity in Steelworkers' agreement; and (3) that it was, therefore, not necessary to "consider" Trainmen's agreement in interpreting Steelworkers' agreement.

The issues, as outlined above, are perplexing, and, for a number of years, have been a source of litigation. In Order of Ry. Conductors of America v. Pitney, 1946, 326 U.S. 561, 567, 66 S.Ct. 322, 90 L.Ed. 318, it was intimated in dictum that a division of the National Railroad Adjustment Board had jurisdiction to consider the collective bargaining agreement of one union in the light of agreements between the carrier and other unions. This dictum was applied in Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 1951, 188 F.2d 302, (each union subject to the jurisdiction of the Third Division) and in Missouri-Kansas-Texas R. Co. v. National Railroad Adjustment Board, D.C. N.D.Ill.1954, 128 F.Supp. 331 (each union subject to the jurisdiction of the Third Division; Third Division ordered to give notice, consolidate cases and consider agreements of all unions involved). The Pitney dictum was extended in Seaboard Air Line R. Co. v. Castle, D.C., 170 F.Supp. 327. In denying a motion to dismiss, Judge LaBuy asserted that the Third Division could be compelled to give notice to unions whose disputes are normally heard by other divisions. Since the giving of notice would be a meaningless act unless accompanied by the power to consider the agreements of the unions so notified, the Seaboard case may properly be applied to the case at bar in support of the proposition that the Fourth Division has jurisdiction to consider the agreement of Trainmen.

However, it is not necessary to decide whether the Fourth Division has

such jurisdiction. For purposes of this memorandum, I will expressly assume, without deciding, that jurisdiction exists. But this assumption avails the plaintiff very little. Although the Fourth Division may have jurisdiction to consider Trainmen's agreement, it does not necessarily follow that an award is *void* if rendered without consideration of the agreement. The plaintiff has cited no case in which an award was declared void solely because of the failure to consider the agreement of a third-party union where notice was given to the union. On the facts of the case at bar, it appears that the failure of the Fourth Division to consider Trainmen's agreement achieves no greater status than the failure of an administrative body to consider any relevant item of evidence. Further, on the facts of the instant case, the failure of the Fourth Division to "consider" Trainmen's agreement could not have prejudiced plaintiff's rights. As Steelworkers argues, and as the Fourth Division found, the hearing was not an adversary proceeding with reference to the interpretation of Steelworkers' contract because plaintiff admitted that the disputed work was covered by Steelworkers' contract. Consequently, no real dispute existed between the parties, and it was not necessary for the Fourth Division to consider Trainmen's contract in interpreting Steelworkers' contract. A court of equity would decree the doing of an unnecessary act if it were to order the Fourth Division to set aside Award No. 1223, to re-open the case, and to consider both contracts before rendering a new award. Such action should not be undertaken by a court of equity.

Next, the plaintiff asserts that the failure to consider both agreements has resulted in conflicting awards, and that consideration of both agreements is necessary to resolve the conflict. The plaintiff is mistaken. Conflicting awards have arisen not as a result of failure to consider both agreements, but as a result of plaintiff's consent to submission of Trainmen's claim to an administrative body whose award could not afford plaintiff any protection against a subsequent claim by Steelworkers.

■ Finally, the plaintiff argues that if Award No. 1223 is voided and if the Fourth Division is ordered to re-open the case and to consider both contracts, the Fourth Division may obviate the possibility of dual awards by rendering a decision against Steelworkers. This court cannot consider the merits of Steelworkers' claim. However, this court can consider the equitable aspect of plaintiff's argument, and, from the standpoint of equity, plaintiff's argument is without merit. Throughout the maze of administrative proceedings already had in this dispute, plaintiff has insisted that the disputed work should be performed by the carloaders. Now, in a court of equity, plaintiff cannot be permitted to rely upon the possibility of an award which, by its own admission, would be erroneous.

For the reasons above stated, I am of the opinion that plaintiff is not entitled to relief from Award No. 1223.

■ In the alternative, plaintiff contends that if the court declines to order the Fourth Division to consider Trainmen's Contract, it should declare that Award No. 1223 is valid and binding on Trainmen because Trainmen received notice and an opportunity to be heard. The defendants (other than the Carrier Members) argue vigorously that the Fourth Division has no jurisdiction over Trainmen. The parties, in support of their respective contentions, rely on various portions of the Railway Labor Act and its legislative history. Difficult problems of statutory construction are thereby presented. These problems need not be resolved, for, in any event, the plaintiff is not entitled to relief. However, it is necessary to ascertain exactly what relief is sought by the plaintiff. The second topic heading of the plaintiff's brief is as follows:

"In the Alternative, Since Award 1223 Was Rendered After Notice

and Opportunity to be Heard Were Afforded to Trainmen, Steelworkers and Plaintiff's Coal Dock Employees, It Is Binding Upon All Of Them." (Pl.Br., p. 17.)

If plaintiff is merely seeking a declaration that Trainmen cannot contest the specific issues decided by the Fourth Division, the relief sought is valueless. The opinion of the Fourth Division (Stipulation Ex. K) makes it clear that, on the merits, the only question decided was whether the disputed work was covered by the collective bargaining agreement between Steelworkers and plaintiff. A majority of the Fourth Division (the Labor Members of the Referee) expressly declined to consider Trainmen's agreement, and no determination was made of Trainmen's rights under that agreement. Accordingly, there is nothing in the decision and award of the Fourth Division by which Trainmen could be bound.

■ It is probable, however, that plaintiff seeks a declaration that the decision and award of the Fourth Division constituted a complete resolution of the triangular dispute, and that the decision and award in favor of Steelworkers must be construed as a decision and award against Trainmen. If this is the relief that plaintiff seeks, it, too, must be denied. First, as noted above, the Fourth Division did not determine the rights of Trainmen. Second, plaintiff is in no equitable position to insist that Trainmen be bound because plaintiff is in no equitable position to attack the award of the Special Board of Adjustment which determined Trainmen's rights.[7]

For the foregoing reasons, I am of the opinion that plaintiff is entitled to no relief, and must be remitted to such legal remedies and defenses as it may have in an action to enforce the awards issued against it. Entry of judgment in favor of all defendants is directed. Plaintiff will bear the costs of this action.

---

7. Plaintiff recognizes that the granting of the alternative relief sought is dependent upon the voiding of Award No. 34. At p. 1 of plaintiff's supplemental brief it is stated:

This memorandum of decision contains the findings of fact and conclusions of law required under Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S. C.A.

"Since as we shall show, Award 34 was void, the Trainmen are bound by Award 1223 of the Adjustment Board * * *."